1
2
3
4
5
6
7
8

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665
***Class Counsel***

9
10
11

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

12
13

MELISSA NIGH, individually and on behalf of all others similarly situated,

14      Plaintiff,

15
16      v.

17
18
19
20

HUMPHREYS PHARMACAL, INCORPORATED; and DICKINSON BRANDS, INC.,

21      Defendants.

22
23
24
25
26
27
28

Case No.  3:12-cv-02714-MMA-DHB
Class Action

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**[FILED CONCURRENTLY WITH DECLARATION OF MARKHAM SHERWOOD, AND DECLARATIONS OF RONALD A. MARRON AND MELISSA NIGH IN SUPPORT OF FEES, COSTS, AND INCENTIVE AWARD, AND PROPOSED ORDER]**

Judge:      Hon. Michael M. Anello
Date:        October 21, 2013
Time:        2:30 p.m.
Location:   Courtroom 5

[Motion date set by the Court in Preliminary Approval Order (Dkt. 11) and Amended Preliminary Approval Order (Dkt. 13)]

---

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  HISTORY OF LITIGATION ........................................................................ 1

    A. The Parties and Pleadings.................................................................. 1

    B. The Parties' Negotiations Regarding Settlement ............................ 2

    C. Plaintiff Engaged Defendants in Substantial Discovery ................. 3

    D. Motion for Preliminary Approval is Granted .................................. 4

    E. The Court Certified the Class for Settlement Purposes ................. 4

III. TERMS OF THE SETTLEMENT ............................................................... 5

    A. Four Modes of Injunctive Relief ..................................................... 5

    B. Monetary Relief ............................................................................... 7

    C. Attorneys' Fees, Expenses and Incentive Awards ......................... 8

    D. Funding Successful Objections ....................................................... 9

IV.  STANDARD OF REVIEW ........................................................................... 9

V.   THE COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL
    BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE .......................... 10

    A. The Settlement Was Not the Product of Fraud or Collusion ......... 10

    B. The Strength of Plaintiff's Case Favors Final Approval................. 11

    C. The Complexity, Expense, and Probable Length of Litigation
       Favor Final Approval .................................................................. 13

    D. The Risk of Maintaining Class Action Status throughout Trial
       Favors Final Approval ................................................................ 14

    E. The Settlement Amount Favors Final Approval ............................. 14

    F. The Stage of the Pleadings and Discovery Favor Final Approval ................. 16

    G. The View of Experienced Counsel Favors Final Approval ............................ 17

i

H. The Adequacy of the Notice Plan Supports Final Approval ......................... 17

    i.   Content of the Notices ................................................................ 18

    ii.  Direct Notice to Class Members ............................................ 19

    iii. Magazines .................................................................................... 19

    iv. Newspapers ................................................................................. 20

    v.  Press Releases ........................................................................... 20

    vi. Online Notice ............................................................................. 20

    vii.   Notice to Attorneys General of Each State ........................ 21

I.  A Summary of Claims Information and the Reaction of the Class to the Proposed Settlement Support Final Approval ................................. 21

    i.   Total number of opt out requests received ............................ 21

    ii.  Total number of valid claims received ................................. 22

    iii. Total dollar amount to be paid to Class Members who submitted valid claim forms .................................................. 22

    iv. Best estimate of the amount to be paid to the Class Administrator ...... 23

    v.  The dollar amount that remains from the settlement fund after valid claims are paid .................................................. 23

J.  The Chosen Cy Pres Recipient is Appropriate ................................. 24

K. The Presence of a Governmental Participant ................................... 24

L. The Balanced Factors Weigh in Favor of Final Approval ............................ 24

VI.     CONCLUSION .................................................................................... 25

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.,*
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................... 11

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 17

*Bruno v. Eckhart Corp.,*
  No. SACV 11-0173 DOC, 2012 WL 752090 (C.D. Cal. Mar. 6, 2012) .................. 14

*Churchill Vill., LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004).......................................................... 10, 19, 23

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ......................................................................... 9

*Colgan v. Leatherman Tool Grp., Inc.,*
  135 Cal. App. 4th 663 (2006) ......................................................................... 12

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) .................................................................. 14, 17

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
  2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008) ................................... 9

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 10

*In re Chicken Antitrust Litig. Am. Poultry,*
  669 F.2d 228 (5th Cir. 1982)......................................................................... 15

*In re Ferrero Litig.,*
  No. 11-CV-00205-H-KSC, 2012 WL 2802051 (S.D. Cal. July 9, 2012)................. 18

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995)............................................................................. 3

*In re Heritage Bond Litig.,*
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................... 10

*In re Heritage Bond Litig.,*
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................... 3

*In re Indep. Energy Holdings PLC,*
  No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)................. 11

*Nigh v. Humphreys, Incorporated,* Case No.  3:12-cv-02714-MMA-DHB
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT

*In re Nvidia Derivs. Litig.*,
   No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............ 13

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................................. 14

*In re Pac. Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)............................................................................... 9, 17

*In re Synthroid Mktg. Litig.*,
   110 F. Supp. 2d 676 (N.D. Ill. 2000) ..................................................................... 19

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000) ........................................................................... 15

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................ 16

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................... 9, 16

*Lowenschuss v. Bluhdorn*,
   613 F.2d 18 (2d Cir. 1980) .................................................................................... 15

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)................................................................................. 14

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) .............................................................................. 19

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................. 18

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 10, 13, 17

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)................................................................... 9, 10, 14

*Ozga v. U.S. Remodelers, Inc.*,
   No. C 09-05112 JSW, 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010)...................... 15

*Riker v. Gibbons*,
   No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 27, 2010) ........... 15

*Rodriguez v. West Publ'g Corp.* ("*Rodriguez I*"),
   2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007) ...................................... 13

*Nigh v. Humphreys, Incorporated,* Case No.  3:12-cv-02714-MMA-DHB
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT

*Rodriguez v. West Publ'g Corp.* (*Rodriguez II*"),
    563 F.3d 948 (9th Cir. 2009) ................................................................... 14, 18

*Taifa v. Bayh*,
    846 F. Supp. 723, (N.D. Ind. 1994) ........................................................... 16

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ............................................................ 13

*Young v. Polo Retail, LLC*,
    2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ......................... 16

**Statutes**

21 C.F.R. § 101.93(c)(2) ...................................................................................... 7

21 U.S.C. § 301 ................................................................................................... 4

28 U.S.C. § 1715 ............................................................................................... 21

28 U.S.C. § 1715(d) ........................................................................................... 21

Cal. Bus. & Prof. Code § 17200 .......................................................................... 2

Cal. Bus. & Prof. Code § 17500 .......................................................................... 2

Cal. Civ. Code § 1750 .......................................................................................... 2

Cal. Code Civ. Proc. § 384 ................................................................................. 24

Cal. Health & Safety Code §§ 109875-111900 .................................................... 4

**Rules**

Fed. R. Civ. P. 23(a)(1)-(4) .................................................................................. 5

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 5

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 5

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 18

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 10

**Other Authority**

FDA Compliance Policy Guide § 400.400 ........................................................... 6

Pursuant to the Court's January 23, 2013 and January 29, 2013 Orders Granting Preliminary Approval, Plaintiff Melissa Nigh respectfully submits this Memorandum of Points and Authorities in support of her Motion for Final Approval of the proposed classwide Settlement with Defendants.

## I.     INTRODUCTION

This is a class action, certified for settlement purposes, in which Plaintiff alleges false and deceptive advertising of Defendants Humphreys Pharmacal, Incorporated and Dickinson Brands, Inc.'s (collectively, "Defendants") homeopathic drugs.  Dkt. No. 1. The action was settled in good faith after significant arm's length negotiations between the Parties, including through the use of an independent third party mediator, the Honorable Leo S. Papas (Ret.).  As part of the settlement, Defendants have agreed to modify the labels of all of their homeopathic products in four significant aspects, to eliminate allegedly false and deceptive labeling and provide disclaimers that will advise consumers of the nature of Defendants' homeopathic drugs.  On top of the strong injunctive relief provided by the settlement, Defendants have also established a substantial $1.4 million common fund in favor of the Class, to provide claimants full cash refunds, with a generous cap, and several other benefits.  As a result, the instant Class settlement is not just fair, reasonable and adequate, but is strongly in the Class' and the public's best interest.  Accordingly, Plaintiff respectfully requests the Court grant the Settlement Agreement final approval.

## II.     HISTORY OF LITIGATION

### A.     The Parties and Pleadings

On November 7, 2012, Plaintiff filed this putative class action against Defendants.  Dkt. No. 1.  Defendants manufacture, distribute and market a range of homeopathic remedies as being effective in relieving ailments and symptoms with respect to three general categories of health-related complaints:  Children's Remedies (primarily teething remedies), Cold & Flu Remedies and Pain Relief Remedies

1

(collectively, the "Products").  Plaintiff purchased Defendants' Humphreys Teething Tablets during the Class Period.  *Id.* at ¶¶ 15-17.  In purchasing Defendants' Product, Plaintiff relied on Defendants' false and misleading packaging and labeling representations about the Product's nature and overall effectiveness.  *Id.* at ¶¶ 15-17, 22, 30, 38, 47, 56, 64, 72, 80, 88, 100, 108, 150.  Defendants' Product(s) did not work for Plaintiff as advertised.  *Id.* at ¶¶ 17.

Accordingly, Plaintiff alleges that Defendants' representations regarding the characteristics, benefits, and abilities of their Products are false and misleading, and violate the Unfair Competition Law ("UCL", Cal. Bus. & Prof. Code §§ 17200, *et seq.*), False Advertising Law ("FAL", *id.* §§ 17500, *et seq.*) and Consumer Legal Remedies Act ("CLRA", Cal. Civ. Code §§ 1750, *et seq.*).  Plaintiff further alleges that Defendants' conduct contravenes the Magnuson-Moss Warranty Act ("MMWA," 15 U.S.C. §§ 2301, *et seq.*) and constitutes a breach of express and implied warranties, and unjust enrichment.  *Id.* at ¶¶ 165-217.  Plaintiff brought this class action on behalf herself and a nationwide class of consumers who purchased Defendants' Products from June 20, 2008 to present.  *Id.* at ¶ 157.  At present, the Court has not set a trial date in this matter, and the Parties have not appeared for an Early Neutral Evaluation and/or a Case Management Conference.

### B.    The Parties' Negotiations Regarding Settlement

The Settlement Agreement is the product of vigorous and competent representation of the Parties that was voluntary initiated at the outset of this litigation. Within a month after Defendants received Plaintiff's June 20, 2012 correspondence that notified Defendants their Product advertisements violated the law, counsel for the Parties commenced an early dialog about the merits and risks of the claims and defenses in this case, and continued substantive negotiations throughout the pendency of this matter.  Decl. of Ronald A. Marron filed in support of Joint Mot. for Prelim. Approval (Dkt. No. 9-1, "PA Marron Decl.") ¶¶ 4-8.

1    In reaching a settlement, the Parties electively sought the assistance of an

2   independent, impartial mediator, the Honorable Leo S. Papas (Ret.) of Judicate West.

3   PA Marron Decl. ¶ 7.  The Parties attended three formal mediation sessions before

4   Judge Papas on August 28, 29 and 30, 2012.  *Id.*  The Law Offices of Ronald A.

5   Marron, an independent law firm, represented the interests of Plaintiff and the putative

6   Class.  Defendants were represented by Robinson & Cole, LLP and Sheppard, Mullin,

7   Richter & Hampton.  *Id.* ¶ 8.  In addition to the August 2012 mediation sessions with

8   Judge Papas, the Parties also engaged in approximately five months of detailed and

9   adversarial discussions, both with and without Judge Papas.  *Id.*  On December 7, 2012,

10  after months of intensive negotiations, the Parties finalized the Settlement Agreement.

11  PA Marron Decl. ¶¶ 7-8.[1]

12          **C.    Plaintiff Engaged Defendants in Substantial Discovery**

13          In order to enter into a meaningful mediation, Plaintiff propounded and

14  Defendants responded to targeted discovery requests, producing approximately 50,000

15  documents and items.  PA Marron Decl. ¶¶ 4-5.  Among other investigative research,

16  Plaintiff's counsel reviewed all of Defendants' original sales invoices from 2008 to

17  2012; detailed Sales Analysis Reports; financial reports prepared by outside

18  accountants; mechanicals of the Products' labeling at issue; a list of direct purchasers

19  during the Class Period and communication from same; letters to retailers and

20  distributors; unit sales of the Products; the Products' suggested retail sales prices;

21  detailed advertising information, including date, location and cost of print and video

22  ads; and the advertising itself.  *Id.*

23  _____

24  [1] "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery."

25  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting Manual for Complex Litig. (Third) § 30.42 (1995)).  Moreover,

26  if the terms of the settlement are fair, courts generally assume the negotiations were proper.  *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*,

27  55 F.3d 768, 785-786 (3d Cir. 1995).

28

Plaintiff's counsel also conducted a detailed and comprehensive review of the California Sherman Food and Drug Law ("Sherman Law," *see* Cal. Health & Safety Code §§ 109875-111900), the federal Food, Drug and Cosmetic Act ("FDCA," *see* 21 U.S.C. §§ 301, *et seq.*) and its implementing regulations, Food and Drug Agency ("FDA") guidance documents regarding homeopathic and over-the-counter ("OTC") drugs, standards and monographs established by the Homeopathic Pharmacopeia Committee of the United States, and Federal Trade Commission ("FTC") advertising standards. Plaintiff's counsel utilized this review in preparing the Complaint, crafting the injunctive relief and drafting the Settlement Agreement in this action.

### D.    Motion for Preliminary Approval is Granted

On January 23, 2013, the Court granted the parties' joint motion for preliminary approval of the Settlement, Dkt. No. 9, directed that the Class be notified and set dates relevant to the Final Approval Hearing, Dkt. Nos. 11 & 13 (Dkt. Nos. 11 & 13 are collectively referred to as the "PA Order"). *See also Nigh v. Humphreys Pharmacal, Inc.*, No. 12-CV-2714-MMA DHB, 2013 WL 399179, at *2 (S.D. Cal. Jan. 29, 2013). The Court found that the Settlement Agreement's "terms appear sufficient, and fair, reasonable and adequate to warrant dissemination of notice of the proposed settlement to the Class" and noted it "contains no obvious deficiencies." *Id.* at *3. The Court also approved the parties' proposed Notice Plan and Settlement Administrator. *Id.* at *4-5.

### E.    The Court Certified the Class for Settlement Purposes

In the PA Order, the Court found that the requirements of Rule 23 were met for the proposed Class, and certified the Class for settlement purposes. *Id.* The Court appointed Plaintiff as Class Representative and the Law Offices of Ronald A. Marron as Class Counsel. *Id.* at *2-3.

The Court should reaffirm its Rule 23(a) and (b) findings, as the facts continue to support that:  The class is numerous; common questions of law or fact exist regarding whether Defendant's labeling was false and deceptive; Nigh's claims are typical of the

4

Class' claims; Nigh is an adequate Class Representative as she has no interests that conflict with those of the Class; and Class Counsel is qualified to adequately represent the class.  Fed. R. Civ. P. 23(a)(1)-(4).  Further, the four modes of injunctive relief apply evenly across the Class, benefit all Class Members equally, and the monetary relief springs out of the same harm that justifies injunctive relief, such that certification under Rule 23(b)(2) is appropriate.  Also, common questions predominate over individual questions and class treatment is a superior mode of judicial relief than individual litigation of each Class Member's purchases, which average $10 per Product. *See* Fed. R. Civ. P. 23(b)(3); Mot. in Supp. of Prelim Approval (Dkt. No. 9); PA Order.

## III.    TERMS OF THE SETTLEMENT

### A.    Four Modes of Injunctive Relief

Under the Settlement Agreement, Defendants have agreed to provide injunctive relief by modifying their Products' labels and websites in four significant aspects.

<u>First</u>, Defendants will place a new "FDA Disclaimer" on all of their Products, next to the Drug Facts Panel.  Settlement Agreement § 4.1.2.  To implement the FDA Disclaimer, Defendants will place an asterisk next to all "Indications of Use" that appear on the packaging of Defendants' Products, which relates each Indication of Use to the FDA Disclaimer.[2]  *Id*. § 4.1.2.2 & Ex. E (exemplars of proposed new packaging for the Products).  The FDA Disclaimer language, which must appear on all Products' labels in a visible font size and color, shall state: "These 'Uses' have not been evaluated by the Food and Drug Administration."  *Id*. §§ 4.1.2, 4.1.2.1.  In addition, Defendants will modify their advertising so the FDA disclaimer will appear wherever a drug facts panel appears in its advertising.  *Id*. § 4.1.2.3.

---

[2] Indications of Use are the statements that Plaintiff identified as false and misleading on the Products' packaging (e.g., "Relieves Pain and Inflammation" on Teething Tablets), through which, *inter alia*, Defendants claim the Products effectively relieve symptoms or ailments.  Compl., Ex. 2 at p. 3.

 1    _Second_, Defendants will implement a "Dilution Disclaimer" to address Plaintiff's

 2   claims about deceptive labeling regarding the level of dilution of the active ingredients

 3   in their Products.   The back panel of each Product's outer label or package shall be

 4   modified to include the following language, in close proximity to the Drug Facts: "'X'

 5   is a homeopathic dilution: see [Homeopathic Dilution Web Page]."   _Id_. § 4.1.3.   In

 6   addition, the Dilution Disclaimer shall appear in all of Defendants' advertising that

 7   depicts a readable version of a Product's Drug Facts box.  _Id_. § 4.1.3.2.

 8    In connection with the Dilution Disclaimer, Defendants have also agreed to

 9   modify all websites they own or operate to include a Homeopathic Dilution Page that

10   contains more detailed information contemplated by the Dilution Disclaimer.   _Id_. §

11   4.1.4.  The new Homeopathic Dilution Page shall fully explain to consumers what the

12   "X" level of dilution means, in a question and answer format, and in language

13   understandable to an average member of the public with no knowledge of homeopathic

14   principles.  _Id_. § 4.1.4.3 & Ex. F (screenshots of proposed new Homeopathic Dilution

15   Page).  Defendants shall make the Homeopathic Dilution Page accessible directly on the

16   home page of all of its web sites so that consumers do not have to search for additional

17   information.  _Id_. § 4.1.4.1.  Defendants shall also place a link to the FDA Compliance

18   Policy Guide § 400.400 ("CPG") on their websites, and take reasonable steps to ensure

19   the link remains working.  _Id_. § 4.1.4.4.  The CPG link will provide an additional level

20   of information to consumers about homeopathic drug regulation.

21    Although Defendants currently only manufacture and distribute homeopathic

22   products with an "X" dilution level, the Settlement Agreement also provides that if

23   Defendants subsequently manufacture products in other homeopathic dilution levels

24   (such as "C"), all websites they own or operate will include an explanation of the "C"

25   dilution for consumers, which is substantially similar to the explanation for the "X"

26   dilution provided for in the Agreement.  _Id_. § 4.1.5.

27

28

1    <u>Third</u>, Defendants have agreed not to label the Products with the words "natural,"

2    "all natural" or similar on all Products containing non-natural ingredients.  For purposes

3    of the Settlement, "non-natural" means ingredients derived from synthetic or artificial

4    means, including but not limited to, polysorbate, and any flavors or flavoring in the

5    Products.  *Id*. § 4.1.7.

6        <u>Fourth</u>, Defendants have agreed not to use the words, "no animal ingredients," on

7    all Products containing animal, fish, or insect ingredients.  *Id*. § 4.1.8.

8        Plaintiff assisted Defendants in their efforts to relabel the Products.  The Dilution

9    Disclaimer was conceived by Plaintiff's Counsel with the average consumer in mind.

10   Plaintiff's counsel also developed the FDA Disclaimer, which tracks language

11   established by the FDA for OTC dietary supplements, which products also do not

12   receive premarket FDA approval of their labeling, and therefore are similar to

13   homeopathic drugs.  *See* 21 C.F.R. § 101.93(c)(2) ("These statements have not been

14   evaluated by the Food and Drug Administration.").  Language similar to the FDA and

15   Dilution Disclaimers in this case received final approval in another homeopathic drug

16   case, which demonstrates their suitability for this Settlement.  *See Gallucci v. Boiron,*

17   *Inc.*, No. 11cv2039 JAH (NLS), 2012 WL 5359485, at *6 (S.D. Cal. Oct. 31, 2012)

18   (finding that FDA and dilution disclaimers would "afford[] meaningful injunctive

19   relief"); PA Marron Decl. ¶ 15. In addition, public interest groups have petitioned the

20   FDA for language similar to the FDA Disclaimer achieved in this case, without success.

21   *See* Decl. of Ronald A. Marron in Support of Mot. for Attorney's Fees & Incentive

22   Award filed concurrently herewith ("Marron Fee Decl.") ¶ 3 & Ex. 1.

23       **B.    Monetary Relief**

24       On top of the four modes of injunctive relief, Defendants will contribute

25   $1,400,000 to a Settlement Fund.  Settlement Agreement § 4.2.1.  Defendants will have

26   no ability to recover any of the contributed funds.  *Id*.  The Fund amount was

27   determined from Defendant's sales during the Class Period of $8,697,291.  Kubow

28

Decl. (Dkt. No. 9-3) ¶ 6.  Through the Fund, Defendants will provide a refund to all Class members who provide proof of purchase or affirm they purchased any of the Products, and return a Claim Form within the Claim-In Period.  Settlement Agreement § 4.3.1.  Specifically, the refund shall be:  (i) for any Claimant who provides proof of purchase (such as a receipt or product packaging), the actual purchase price sworn to by the Class Member, up to $10 per Product, subject to a cap of $100 per household; or (ii) for any Claimant who does not provide proof of purchase, the purchase price as sworn to on the claim form, up to $10 per Product, subject to a cap of $50 per household.  *Id*. § 4.3.2.  Payments to Class Members may be subject to pro rata reduction if the aggregate number of claims exceeds the Net Settlement Fund.  *Id*. § 4.3.4.

In addition, if any funds remain in the Net Settlement Fund after all eligible claims, attorneys' fees, expenses, and the incentive award have been paid, remaining funds will be distributed as follows:  (i) 50% as a supplemental distribution to Class claimants; and (ii) 50% to the non-profit organization Consumers Union, which dedicates a significant portion of its consumer education and advocacy efforts to providing consumers with truthful drug labeling.  *Id*. §§ 1.20, 4.3.5.

## C.   Attorneys' Fees, Expenses and Incentive Awards

The Settlement Agreement does not provide any particular attorneys' fees or incentive award, as they were not a topic of discussion during the mediation, or ensuing discussions to formalize the Settlement Agreement.  Rather, the Agreement provides that "Plaintiff will petition the Court for attorneys' fees, expenses, and a Class Representative incentive award.  Defendants shall have the option of responding to any such petition, including by contesting any fees, expenses, or incentive award requested, to the extent the petition requests more than $3,500 as an incentive award for the Class Representative or thirty percent (30%) of the value of the Settlement to the Class as Class Counsel's attorneys' fees."  Settlement Agreement ¶ 9.1.  Any fees, costs and

incentive amounts awarded will be paid from the Settlement Fund. *Id.* ¶¶ 9.2 – 9.3. Defendants, however, will bear their own attorneys' fees, costs and expenses. *Id.* ¶ 9.5.

### D.    Funding Successful Objections

The Settlement Agreement requires Defendants to pay any additional attorneys' fees incurred as a result of a successful objection, if the parties revise the Settlement Agreement in a manner consistent with a successful objection. *Id.* ¶¶ 9.6-9.6.1-2.[3] Although it is unlikely this section will be invoked because of the strength of the settlement and the Class's overwhelmingly positive reaction, this provision—which is not routine—represents a real benefit for the Class because any fees associated with a successful objection will not be assessed against the Class's Settlement Fund.

### IV.  STANDARD OF REVIEW

There is a strong judicial policy in favor of the pretrial settlement of class actions. *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) ; *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).  Thus, while approval of the settlement is committed to the sound discretion of the court, *Class Plaintiffs*, 955 F.2d at 1276, "the court must also be mindful of the Ninth Circuit's policy favoring settlement . . . ." *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) (internal citation omitted).

A district court's review of a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

---

[3] In the event the Court awards fees based on a successful, validly submitted objection related to the adequacy of representation by Class Counsel or Plaintiff Nigh, the additional fees are to be paid from the Fee and/or Incentive award. *See Id.*

1  overreaching by, or collusion between, the negotiating parties, and that the settlement,

2  taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for*

3  *Justice*, 688 F.2d at 625.   A "presumption of fairness arises where: (1) counsel is

4  experienced in similar litigation; (2) settlement was reached through arm's length

5  negotiations; [and] (3) investigation and discovery are sufficient to allow counsel and

6  the court to act intelligently."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS

7  13555, at *11 (C.D. Cal. June 10, 2005); *see also Nat'l Rural Telecomms. Coop. v.*

8  *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (settlements that follow

9  sufficient discovery and genuine arms-length negotiation are presumed fair.).

10  　　　The Court may approve a class action settlement upon "finding that it is fair,

11  reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Officers for Justice*, 688

12  F.2d at 625.  In assessing the fairness, adequacy, and reasonableness of a settlement,

13  courts balance:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
> likely duration of further litigation; (3) the risk of maintaining class action
> status throughout the trial; (4) the amount offered in settlement; (5) the
> extent of discovery completed and the stage of the proceedings; (6) the
> experience and views of counsel; (7) the presence of a governmental
> participant; and (8) the reaction of the class members to the proposed
> settlement.

14
15
16
17
18

19  *Churchill Vill., LLC*, 361 F.3d at 575 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

20  1026 (9th Cir. 1998)).

21  ## V.　　THE COURT SHOULD GRANT THE SETTLEMENT FINAL

22  ## APPROVAL BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE

23  **A.　The Settlement Was Not the Product of Fraud or Collusion**

24  　　　The Settlement Agreement raises a presumption of fairness because it is the

25  product of arm's length negotiations, conducted by experienced counsel after extensive

26  investigation and discovery into the underlying merits of this case.  *See* Marron Fee

27  Decl. ¶¶ 4-12, 23.  Counsel for the Parties engaged in settlement negotiations that

28

spanned over several months and involved the services of a competent, experienced, and independent mediator and retired federal judge.[4]  PA Marron Decl. ¶ 7; Heath Decl. ((Dkt. No. 9-2, hereafter "Heath Decl.") ¶ 3.

The Parties also conducted substantial discovery, including production of approximately 50,000 of Defendants' internal documentation on sales, revenue, and advertising.  PA Marron Decl. ¶¶ 4-5.  Further, the Parties' respective counsel have separately litigated multiple complex class action cases and were fully equipped and experienced to negotiate the terms of the Settlement Agreement.  Marron Fee Decl. 4-12; Heath Decl. ¶ 5.  Therefore, the Settlement Agreement is not the product of fraud or collusion between the negotiating parties, and taken as a whole, is fair, reasonable and adequate to all concerned, so as to warrant final approval.

**B.    The Strength of Plaintiff's Case Favors Final Approval**

Plaintiff believes she had a strong case that Defendants' advertising was false or deceptive to consumers, based on arguments that the average consumer is unaware of the high level of dilution in the Products and could not determine that dilution level merely from seeing an "X" on the Products' labels.  Plaintiff also alleges the average consumer is unaware that homeopathic drugs are regulated differently than other over-the-counter medicines, including the lack of awareness that the FDA does not even review, much less approve, the statements on Defendants' packaging.  Thus Plaintiff believes she stood a realistic chance of establishing each element of the reasonable consumer test under the UCL, FAL and CLRA.  But getting to that point in the

---

[4] The fact that the Settlement was prompted by an experienced mediator is one factor that demonstrates the Settlement was not collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the Settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that the settlement was reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

*Nigh v. Humphreys, Incorporated*, Case No.  3:12-cv-02714-MMA-DHB
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

litigation is no sure thing.  Although Plaintiff believes her claims are meritorious and strong, she acknowledges she faces obstacles to an ultimate recovery.

First, Defendants would likely argue, among other things, that Plaintiff's claims are either (i) expressly preempted under the FDCA; (ii) impliedly preempted for seeking to frustrate federal objectives; and/or (iii) barred by the primary jurisdiction or safe harbor doctrines which are regularly applied to claims challenging the label of a FDA-regulated product, such that no false advertising case has ever been successful at trial against a homeopathic drug manufacturer.  Further, Defendants would presumably note that the FDA has brought no enforcement action against them for any of the Products (as they have against other homeopathic drug companies).  Accordingly, there is an attendant risk that this case could be dismissed altogether, and the Class take nothing, based on the foregoing issues.

Second, Defendants would most likely have asserted they have clinical and other support for their Products' efficacy claims, and present evidence that would be subject to expert analysis, dueling reports and testimony.  Although Plaintiff believes she would prevail on this point, Plaintiff acknowledges the inherent risk that reliance on expert testimony entails.

Third, even if Plaintiff established Defendants' liability, she would still be required to establish damages or entitlement to injunctive relief, an area that might also be subject to expert analysis, and competent offers of proof sufficient to meet Plaintiffs' burden.  *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006) (holding that Plaintiffs have the burden of proving the proper amount of restitution, through "substantial evidence").  This, too, presents some risk.

Fourth, Plaintiff recognizes Defendants have several factual and legal defenses that, if successful, would defeat or substantially impair the value of her claims.  For example, Plaintiff might not be able to: (1) satisfy her burden of demonstrating that the Products do not work; (2) establish consumer fraud and show that a significant portion

1    of the Class was deceived; (3) achieve or retain class certification through trial, or (4)

2    certify the Class Period agreed to for purposes of Settlement because of statute of

3    limitations issues.   Should Defendants prevail on any of these issues, the strength of

4    Plaintiff's case on behalf of the Class would be substantially diminished.   *See West*

5    *Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970) ("It is

6    known from past experience that no matter how confident one may be of the outcome of

7    litigation, such confidence is often misplaced").   Settlement, however, "eliminates these

8    and other risks of continued litigation, including the very real risk of no recovery after

9    several years of litigation."   *In re Nvidia Derivs. Litig.*, No. C-06-06110-SBA (JCS),

10   2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).   Accordingly, this factor weighs in

11   favor of final approval.

12       **C.      The Complexity, Expense, and Probable Length of Litigation Favor**

13               **Final Approval**

14       Plaintiff's claims involve complex legal issues, and the costs and risks associated

15   with litigating would require extensive resources and Court time. "[A]voiding a trial

16   and inevitable appeals in this complex . . . suit strongly weigh in support of approval of

17   the Settlement, rather than prolonged and uncertain litigation." *Rodriguez v. West*

18   *Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74767, at *27-28 (C.D. Cal. Sept. 10, 2007)

19   ("*Rodriguez I*").   "[U]nless the settlement is clearly inadequate, its acceptance and

20   approval are preferable to lengthy and expensive litigation with uncertain results."

21   *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.   Nigh's claims involve difficulty

22   regulatory issues under the Sherman Law, FDCA, and OTC drug marketing standards,

23   plus consumer perceptions and the claimed efficacy of the Products.   The costs and

24   risks associated with continuing to litigate would require extensive resources and Court

25   time, such as expert testimony and *Daubert* motions.   "Avoiding such a trial and the

26   subsequent appeals in this complex case strongly militates in favor of settlement rather

27   than further protracted and uncertain litigation." *Id.* at 527.

28

13

**D.    The Risk of Maintaining Class Action Status throughout Trial Favors Final Approval**

While Plaintiff strongly believes that class treatment is appropriate for all reasons discussed herein, there is a genuine risk that Plaintiff will not be able to maintain class action status for purposes of litigation, including to maintain that certification through trial.  Other than consenting to class certification for the purposes of Settlement only, Defendants would vigorously oppose class certification.  *See* Settlement Agreement §§ 10.3, 12.4.  And, even if the class were certified, Defendants might seek decertification or modification of the class.  *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("*Rodriguez II*").  Further, *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) has served as the impetus for a number of decertification motions.  *See*, *e.g.*, *Bruno v. Eckhart Corp.*, No. SACV 11-0173 DOC, 2012 WL 752090 (C.D. Cal. Mar. 6, 2012). In contrast, by settling the action, Defendants effectively accede to certification and "there is much less risk of anyone who may have actually been injured going away empty-handed."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1041-42.  As such, this factor weighs in favor of final approval.

**E.    The Settlement Amount Favors Final Approval**

"[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625.  Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Id*. at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  To assess the reasonableness of a proposed settlement for monetary relief, the "inquiry into fairness should contrast settlement rewards with likely rewards if [the] case goes to trial," and consider that "costs of further litigation and risks

14

of proof difficulties militate in favor of settlement approval." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239-240 (5th Cir. 1982) (citing *Lowenschuss v. Bluhdorn*, 613 F.2d 18, 19-20 (2d Cir. 1980)).

Here, the Settlement provides substantial monetary relief for the Class and achieves what Plaintiff sought in her putative class action Complaint. The monetary relief amounts to approximately 8% of Defendants' gross sales through the Class Period. *See* Kubow Decl. (Dkt. No. 9-3) ¶ 6. The Settlement terms are also fair, reasonable and adequate, allowing each Class Member to be compensated up to $100 and $50, with an additional supplemental distribution. In addition, these payments will be achieved without the delay associated with further litigation, trial and likely appeal. Also, the Settlement provides that unclaimed funds will not revert to Defendants. *See* Settlement Agreement, ¶ 4.2.1; *see also Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010); *Stuart v. Radioshack Corp.*, No. C-07-4499-EMC, 2010 WL 3155645, at *4 (N.D. Cal. Aug. 9, 2010) ("no reversion" of settlement monies to defendant "provides substantial assurance that the settlement reflect[s] good faith on the part of the negotiating parties").

The injunctive relief provided for in the Settlement Agreement should also not be overlooked. It will address the harm allegedly caused to the Class and provides Plaintiff and the Class with invaluable relief going forward – a change in product labeling and informational disclosures, at a cost to Defendants of at least $310,000. Kubow Decl. (Dkt. No. 9-3) ¶ 8. The value of this substantive and widespread change to Defendants' practices cannot be overstated. *See Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) (approving a settlement for injunctive and declaratory relief, finding that it "achieve[d] the goals of the lawsuit"); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 353-54 (E.D.N.Y. 2000) (noting "expeditious" and "deterrent" effect of class action settlements, compared to the difficulties and costs of continued litigation). The substantial monetary relief and

four modes of injunctive relief achieved by the Settlement weigh in favor of final approval.

**F.    The Stage of the Pleadings and Discovery Favor Final Approval**

The greater the amount of information shared between the parties, the more likely it is the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *12 (N.D. Cal. Mar. 28, 2007) (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)).  "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239 (citation and internal quotations omitted).  This is especially true "where there has been sufficient information sharing and cooperation in providing access to necessary data." *Misra v. Decision One Mortg. Co.*, No. SA-cv-07-0994-DOC (RCx), 2009 WL 4581276, at *8 (C.D. Cal. 2009); *see also Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (noting that although settlement discussions commenced early in litigation, class counsel had engaged in an extensive and thorough investigation of the background and facts pertinent to the claims raised).

Plaintiff conducted substantial informal discovery, including reviewing approximately 50,000 of Defendants' internal documents, including original invoices for all years of the Class Period, marketing data, advertising information, and third party financial reports.  PA Marron Decl. ¶¶ 4-5.  Plaintiff's counsel also reviewed FDA guidance documents, the FDCA and Sherman Law, and background evidence relating to the Products' claims.  *See id.* ¶ 6.   After performing a detailed review, of the documents, Plaintiff's counsel concluded that for June 2008 to June 2012, Defendants' revenue figures were accurate.  *Id.* ¶¶ 5, 9.  Thus, the Parties' had sufficient information to make an informed decision about the terms of the Settlement Agreement, and this factor weighs in favor of final approval.  *See also* Marron Fee Decl. ¶¶ 4, 8-12, 21-23.

16

### G.     The View of Experienced Counsel Favors Final Approval

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. 2009) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (noting the "great weight" that should be given to recommendations of counsel, and that "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its judgment for that of counsel") (citing *Cotton*, 559 F.2d at 1330 ).   Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).   Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622.

Here, "[i]n addition to being familiar with the present dispute, Plaintiff['s] counsel has considerable expertise in . . . consumer and class action litigation." *Knight*, 2009 WL 248367, at *4; PA Marron Decl. ¶¶ 12-29; Marron Fee Decl. ¶¶ 4, 8-12, 21-23.   Class Counsel also has unique expertise in food, drug and supplement false advertising claims, and homeopathic drug false advertising claims, in particular. Marron Fee Decl. ¶¶ 4, 8-12.   There is also nothing to counter the presumption that counsel's recommendation is reasonable.   Considering the risks, resources needed, and delays inherent in continuing to litigate this action, the Parties believe the proposed Settlement provides a substantial recovery that is in the best interests of the Class Members.   *See* PA Marron Decl. ¶ 9; Heath Decl. ¶¶ 5-8.

### H.     The Adequacy of the Notice Plan Supports Final Approval

The Notice Plan was adequate, supporting final approval.   Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   "When approving a settlement, a court must ensure that notice is made in a 'reasonable manner to all class members who would be bound by the proposal.'"   *In re Ferrero Litig.*, No. 11-CV-00205-H-KSC, 2012 WL 2802051 at *2 (S.D. Cal. July 9, 2012) (citing Fed. R. Civ. P. 23(e)(1)).   *See also* PA Order at ¶ 11 (approving Notice Plan).   Here, the Notice Plan was based on the Class Administrator's research, to determine the most effective way to reach U.S. adults who trust homeopathic remedies, and who would be potential Class members.   Settlement Agreement, Ex. G; Decl. of Markham Sherwood of Gilardi & Co. filed concurrently herewith ("Sherwood Decl.") ¶ 9.

### i.   Content of the Notices

Per the Court's Order, PA Order ¶ 11, all of the notices prominently included Defendants' logo that depicted a "Humphreys" curved banner and a depiction of a female holding leafy branches above her head with a meadow-like background and trees, Sherwood Decl., Ex. B.   "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably . . . ."  *Rodriguez II*, 563 F.3d at 962 (rejecting argument that notice should have included "the expected value of fully litigating the case").   The Notice Plan presented the relevant information in an eye-catching but neutral manner, using understandable terms.   *See id.*; Sherwood Decl., Exs. A-B.

The Notice also included all information necessary to comply with due process, stating, *inter alia*, the subject matter of this litigation; that a settlement had been reached and the amount of the monetary fund; the amount each Class member could receive; how to file a claim; that each Class member had the right to exclude themselves from the Settlement Class or object, and how to exclude themselves or object; Class Counsel's intent to apply for attorneys' fees, expenses and compensation for the named Plaintiff, and how and when to view those documents; the date of the Fairness Hearing and location of the Court and Court Clerk; contact information for the Claims

*Nigh v. Humphreys, Incorporated*, Case No.  3:12-cv-02714-MMA-DHB
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

Administrator; and instructions to view the Settlement Website for more details and to obtain a claim form.  Sherwood Decl., Exs. A-B.  This met the requirements of Rule 23 and due process.  *See*, *e.g.*, *Churchill Vill., LLC*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *In re Synthroid Mktg. Litig.*, 110 F.Supp.2d 676, 680 (N.D. Ill. 2000) ("direct mailings, toll-free 1-800 numbers, websites, and [a] call center are reasonable steps" to notify a class); *In re Ferrero*, 2012 WL 2802051, at *3 (finding notice adequate when it contained basic terms of settlement agreement and means to read full agreement, date of fairness hearing, class counsel's intent to move for fees and incentive awards, and each class members' right to object or opt out).  The Claims Administrator also distributed the Notice Consistent with the Court's Order, as follows.  *See also* PA Order ¶ 11; Sherwood Decl. ¶¶ 3-15 & Exs. A-E.

### ii.   Direct Notice to Class Members

The Products were not sold direct-to-consumers and Defendants did not have mailing addresses for all but a very small number of Class members.  Kubow Decl. (Dkt. No. 9-3) ¶ 5; Sherwood Decl. ¶ 3 (stating Defendants gave the Claims Administrator mailing addresses for 51 Class Members).  Direct notice to all 51 persons occurred on February 19, 2013, with pre-verification of the mailing addresses through the National Change of Address Database of the U.S. Postal Service.  Sherwood Decl. ¶¶ 3-4.  Re-mailing occurred for all notice packets returned as undeliverable.  *Id.* ¶ 5.

### iii.   Magazines

The Claims Administrator published Notice of the Settlement in the March 2013 issues of *Parents* magazine, with a circulation of 2,058,281 individuals; the April 2013 issues of *Health* magazine with a circulation of 1,363,162; and *Natural Health* magazine with a circulation of 346,618 individuals.  Sherwood Decl. ¶ 6-8 & Exs. B, E.

19

### iv.    Newspapers

The Claims Administrator published Notice of the Settlement in the February 11, February 18, February 25 and March 4, 2013 nationwide editions of USA Today, which has a circulation of 1,829,099 individuals.  Sherwood Decl. ¶ 7 & Exs. B, E.

### v.    Press Releases

On February 20, 2013, the Claims Administrator issued a party-neutral press release over PR Newswire, which provided the release to thousands of media outlets across the country, including national and local newspapers, websites, television and radio stations.  *Id*. ¶ 8 & Exs. C-E.

### vi.    Online Notice

The Claims Administrator conducted a targeted online notice plan that included Google and Bing Sponsored Links, generating more than 15,000,000 impressions as of July 16, 2013.  *Id*. ¶¶ 9-10 & Ex. D.  On approximately February 11, 2013, the Claims Administrator established a dedicated Facebook page to provide information to potential class members and others seeking information about the proposed settlement. The Facebook page provides: (a) basic information about the Settlement; (b) a link to the Settlement Website; (c) an abbreviated list of answers to frequently asked questions; (d) a copy of the Notice of Proposed Class Action Settlement (in English); and (e) contact information for the Claims Administrator, including a case-dedicated mailing address, toll free telephone number, and email address.  *Id*. ¶ 11 & Ex. D.

On approximately February 6, 2013, the Claims Administrator established an interactive, dedicated Settlement Website to provide information to potential class members and others seeking information about the proposed settlement, and to facilitate the filing of online claims, appearing at www.humphreysclassactionsettlement.com. Sherwood Decl. ¶ 12.  The Settlement Website provided:  (a) a list of Defendants' products addressed in the litigation; (b) an online claims filing feature which allows class members to file a claim online and upload supporting documentation where

applicable; (c) answers to frequently-asked questions; (d) important dates; (e) contact information for the Claims Administrator, including a case-dedicated mailing address, toll-free telephone number, and email address; and (f) full and complete copies of the following documents: (1) Notice of Proposed Class Action Settlement (in English and Spanish); (2) Claim Form (in English and Spanish); (3) Settlement Agreement; (4) Preliminary Approval Order; (5) Complaint; and (6) the Court's Amended Order Preliminarily Approving Class Action Settlement, Certifying the Class, Providing for Notice and Scheduling Order.   As of July 16, 2013, the settlement website had registered 368,929 total hits.  *Id.* ¶¶ 12-13.

After this Motion and the Motion for Attorney's Fees and Costs and Incentive Award are filed, those file-stamped documents will also be posted on the Settlement Website as soon as possible, so that Class Members may review them prior to the Objection Deadline.  *See* PA Order ¶ 7 (setting deadline of Sept. 3, 2013).

### vii.    Notice to Attorneys General of Each State

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, on January 4, 2013, the Claims Administrator served 57 Notice of Settlement packages upon all Attorneys General in the United States, its possessions and territories.  Sherwood Decl. ¶ 2.  No Attorney General objected.  *Id.* ¶ 18.  The 90-day window between giving notice and when a final approval order may be entered has expired.  28 U.S.C. § 1715(d).

## I.    A Summary of Claims Information and the Reaction of the Class to the Proposed Settlement Support Final Approval

### i.    Total number of opt out requests received

The opt-out deadline for this matter was June 19, 2013.  PA Order at ¶ 17.  To date, one (1) request to opt out from the Settlement Agreement has been received. Sherwood Decl. ¶ 17 & Ex. F.  Given the millions of unique impressions that the Notice achieved, the existence of just one request for exclusion from the Class weighs in favor of final approval.

*Nigh v. Humphreys, Incorporated,* Case No.  3:12-cv-02714-MMA-DHB
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

ii.     **Total number of valid claims received**

The claims filing deadline for this matter was June 19, 2013.  PA Order at ¶ 15. To date, 91 physical claim forms and 2,672 online claim forms, for a total of 2,763 filed claims, representing in excess of 11,600 purchases of the Products, have been received. Sherwood Decl. ¶¶ 16-17.

iii.    **Total dollar amount to be paid to Class Members who submitted valid claim forms**

Of the 2,763 claims received in this matter, 339 have been identified as duplicates, leaving 2,424 unique claims.  *See* Sherwood Decl. at ¶ 16.  After applying the $10 per Product limit, as well as the $50 limit for claims with no documentation and $100 limit for claims with documentation pursuant to the Settlement Agreement, the total dollar amount of the 2,424 unique claims is $79,475.91.  *See id*. ¶ 17.  The Settlement Agreement provides that fifty percent of excess funds after payment of the Claims Administrator fees and expenses, taxes on the Settlement Fund, attorney's fees and costs and incentive award be allocated for a supplemental distribution to the Class, and fifty percent to a non-profit *cy pres* recipient whose purpose is educating and advocating on behalf of consumers regarding truthful drug labeling.   Settlement Agreement § 4.3.5.  After payment of the foregoing costs of settlement and valid claims submitted to date, approximately $647,000 will remain in the Settlement Fund. Sherwood Decl. ¶ 20.  Distributing fifty percent of this amount ($323,500) on a pro rata basis to the 2,424 unique claimants, which equates to approximately $133.45 in additional monetary relief to each Class Member, yields approximately $402,945.91 in the total dollar amount to be paid to Class Members who submitted valid claims.  *See id.*  In addition, the Court could permit the Class Administrator to pay claims submitted after the June 19, 2013 deadline.  *See* PA Order ¶ 18.

### iv.     Best estimate of the amount to be paid to the Class Administrator

To date, the estimated costs incurred to administer the Settlement Agreement, plus the anticipated costs of distributing settlement funds to Class Members is $238,756.36.  Sherwood Decl. ¶ 19.  Total administration costs necessary to complete administration of the settlement is estimated not to exceed $250,000.00.  *See id.*

### v.     The dollar amount that remains from the settlement fund after valid claims are paid

The dollar amount that would remain in the fund after all valid claims are paid would be approximately $323,527.71.  *See id.* at ¶ 20 (including supplemental distribution).  This figure is calculated based on the assumption that attorneys' fees are approved at $420,000; the representative plaintiff award is approved at $3,500.00; $79,445.91 is the total amount for the first distribution to claimants and approximately $323,500 is the total amount for supplemental distribution to all claimants on a pro rata basis; and $250,000.00 is the total cost of administration.  *See id.*

Overall, the Class' reaction to the Settlement has been overwhelmingly positive.  Only one Class Member, out of thousands, has opted out.  Sherwood Decl. ¶ 17.  No Class Member has objected as of the date of this filing.  *Id.* ¶ 18.  The absence of a large number of objections to the proposed Settlement raises a strong presumption that the terms of the settlement are favorable to the Class.  *See, e.g., Rodriguez II*, 563 F.3d at 967 (objection rate of 0.014 supported approval of the settlement); *Churchill Vill. LLC*, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received).  Moreover, the Summary of Claims Information favors final approval because all valid claims will be paid in full, with each Class Member receiving between $150 and $250, and for those Class Members that the Notice Plan may not have reached, the injunctive relief and cy pres recipient will educate consumers and advocate on behalf of truthful labeling for OTC drugs.  *See* Sec. J, *infra.*

**J.      The Chosen Cy Pres Recipient is Appropriate**

Consumers Union is an appropriate non-profit to receive leftover funds because its public interests goals are targeted to raising consumer awareness regarding false and deceptive drug labeling, and advocating before Congress on behalf of consumers, some of whom constitute the Class.  *See* at www.consumersunion.org/about (entity is an "expert, independent, nonprofit organization whose mission is to work for a fair, just and safe marketplace for all consumers and to empower consumers to protect themselves," including through its widely-known publication, Consumer Reports).  Part of Consumers Union's non-profit, consumer education goal is specifically targeted to labeling of food, drugs, and health-related products (such as vitamins and dietary supplements).  *See* www.consumersunion.org/pub/p/producthealth_recreation_fitness/ (linking to position statements on the FDA, need for reform, and FDA's labeling regulations regarding supplements); www.consumerreports.org/cro/magazine/2012/09/10-surprising-dangers-of-vitamins-and-supplements/index.htm    (recent   issue informing consumers about the true nature of vitamins, supplements, and other natural health products).  This is on point to the claims made in Nigh's Complaint.  *See* Dkt. No. 1.  In the alternative, the Court is empowered by the Legislature to award the leftover funds to a non-profit legal aid group that provides free legal services to the indigent.  *See* Cal. Code Civ. Proc. § 384; Settlement Agreement § 4.3.5.

**K.      The Presence of a Governmental Participant**

No government entity participated in the Settlement.  All Attorneys General, however, were notified of the terms of the Settlement and none objected.  Sherwood Decl. ¶ 2.  This provides assurance that consumer protection authorities across the nation believe the Settlement is fair.  Consequently, this factor favors final approval.

**L.      The Balanced Factors Weigh in Favor of Final Approval**

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than 'an amalgam of delicate

balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.*  Here, all relevant factors weigh in favor of final approval of the Settlement, especially when considered *in toto*.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court reaffirm its rulings certifying the Class for settlement purposes, and grant final approval to the Settlement Agreement.

Dated: August 1, 2013                    Respectfully Submitted,

*/s/ Ronald A. Marron*
RONALD A. MARRON
*ron@consumersadvocates.com*
**LAW OFFICES OF RONALD A. MARRON, APLC**
SKYE RESENDES
ALEXIS M. WOOD
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Class Counsel***

25