**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665
*Class Counsel for Plaintiff and the Certified Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA NIGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUMPHREYS PHARMACAL, INCORPORATED; and DICKINSON BRANDS, INC.,<br><br>Defendants. | Case No.  3:12-cv-02714-MMA-DHB<br>Class Action<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**<br>[Filed Concurrently with Declarations of Ronald A. Marron and Melissa Nigh, and Proposed Final Judgment and Order]<br><br>Judge:        Hon. Michael M. Anello<br>Courtroom:  5<br>Date:         October 21, 2013<br>Time:         2:30 p.m.<br><br>[Hearing set per Orders Granting Preliminary Approval, Dkt. Nos. 11 & 13] |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT................................... 1

II.   STANDARD OF REVIEW ................................................................. 2

III.  ARGUMENT........................................................................................ 2

    A. Bases for an Award of Attorney's Fees and Expenses ..................... 3

    B. The Court should Apply the Percentage of the Fund Method to Determine Class Counsel's Reasonable Fee ........................................................ 4

    C. Class Counsel's Fee Request of 30% of the Common Fund is Fair and Reasonable ................................................................................... 5

       1. Fees Totaling 30% of a Common Fund Are Often Upheld As Reasonable 5

       2. An Award of 30% of the Common Fund is Reasonable in this Case .......... 8

          a.  The Exceptional Results Obtained................................... 8

          b.  The Effort, Skill and Experience of Class Counsel ........................... 10

          c.  The Complexity of the Issues.................................................. 11

          d.  Risk of Non-Payment, Preclusion of Other Employment and Ongoing Work........................................................................ 12

          e.  Reaction of the Class ................................................. 13

          f.  Bluetooth Factors .......................................................... 14

          g.  The Lodestar/Multipler Crosscheck...................................... 15

    D. The Requested Costs are Fair and Reasonable.............................. 22

    E. The Requested Incentive Award is Fair and Reasonable................... 23

IV.  CONCLUSION...................................................................... 25

APPENDIX 1: CLASS COUNSEL'S LODESTAR ............................... N/A

APPENDIX 2: CLASS COUNSEL'S EXPENSES ................................. N/A

i

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
 421 U.S. 240 (1975) ................................................................................. 3

*Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579 (S.D. Cal.
 May 6, 1991) ............................................................................................. 7

*Barcia v. Contain-A-Way, Inc.*,
 No. 07cv938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ...................... 24

*B-K Lighting, Inc. v. Vision3 Lighting*,
 2009 U.S. Dist. LEXIS 111968 (C.D. Cal. Nov. 16, 2009) ...................................... 19

*Blum v. Stenson*,
 465 U.S. 886 (1984) ........................................................................ 8, 16, 17

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................... 9

Boyd v. Bechtel Corp.,
 *485 F. Supp. 610 (N.D. Cal. 1979)* ........................................................ 14

*Broughton v. Cigna Healthplans*,
 21 Cal. 4th 1066 (1999) ........................................................................... 3

*Bruno v. Quten Research Inst., LLC*,
 No. 8:11-cv-00173-DOC-E, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ............... 18

*Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ................................. 16

*Champion Produce, Inc. v. Ruby Robinson Co.*,
 342 F.3d 1016 (9th Cir. 2003) ................................................................. 3

*Chavez v. Netflix, Inc.*,
 162 Cal. App. 4th 43 (2008) ...................................................................... 5

*Cohorst v. BRE Props., Inc.*,
 10-CV-2666 JM (BGS), 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) .......................... 7

*Craft v. Cnty. of San Bernardino*,
 624 F. Supp. 2d 1113 (C.D. Cal. 2008) .......................................... 5, 6, 7, 22

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) .......................................... 11

*Dunk v. Ford Motor Co.*,
 48 Cal. App. 4th 1794 (1996) .................................................................. 5

ii

*Farmers Ins. Exch. v. Sayas*,
  250 F.3d 1234 (9th Cir. 2001) ................................................................ 3

*Gallucci v. Boiron, Inc.*,
  No. 11cv2039 JAH (NLS), 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012)................ 18

*Glendora Cmty. Redev. Agency v. Demeter*,
   155 Cal. App. 3d 465 (1984) ............................................................ 8, 21

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992)................................................................. 20

*Greene v. Dillingham Constr. NA., Inc.*,
  101 Cal. App. 4th 418 (2002) ............................................................. 12

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010)................................................... 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................... 4, 21

*Harris v. Brinkerhoff*,
  No. 90-3100-DT(JRx) (C.D. Cal. Feb. 21, 1995) .......................................... 7

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
  07 CV 2245 MMA, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010............................ 15

*Hensley v. Eckhart*,
  461 U.S. 424 (1983) .................................................................. 8, 15

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................... 6, 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)...................................................... 2, 3, 14

*In re Fidelity/Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999) ........................................................... 22

*In re First Fidelity Bancorp. Sec. Litig.*,
  750 F. Supp. 160 (D.N.J. 1990) .......................................................... 6

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
  2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ................................ 5, 7

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).......................................................... 8

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

*In re Lorazapam & Clorazepate Antitrust Litig.,*
205 F.R.D. 369 (D. D.C. Feb. 1, 2002) ..................................................... 23

*In re Media Vision Tech. Sec. Litig.,*
913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................... 22

*In re Mego Fin. Corp. Secs. Litig.,*
213 F.3d 454 (9th Cir. 2000).................................................................. 6, 7

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................. 14

*In re Pac. Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995)......................................................................... 6

*In re Public Serv. Co. of N.M.,*
1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) ......................... 7

*In re Reformulated Gasoline (RFG) Antitrust and Patent Litig.,*
MDL Case No. 05-1671 CAS (VBK) (C.D. Cal. Nov. 24, 2008)............... 7

*In re Remeron Direct Purchaser Antitrust Litig.,*
2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) ................................ 6

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3rd Cir. 2005) .................................................................. 15

*In re TSO Fin. Litig.,*
No. 87-7903, 1989 U.S. Dist. LEXIS 8253 (E.D. Pa. July 17, 1989) ......... 6

*In re Xoma Corp. Sec. Litig.,*
1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992)............................ 7

*Iorio v. Allianz Life Ins. Co. of N. Am., Inc.,*
2011 U.S. Dist. LEXIS 21824 (S.D. Cal. Mar. 3, 2011) .......................... 19

*Keating v. Super. Ct.,*
31 Cal. 3d 584 (1982) ............................................................................... 4

*Keith v. Volpe,*
501 F. Supp. 403 (C.D. Cal. 1980) ......................................................... 21

*Kerr v. Screen Extras Guild, Inc.,*
526 F.2d 67 (9th Cir. 1975)...................................................................... 15

*Ketchum v. Moses,*
 24 Cal. 4th 1122 (Cal. 2001)................................................ 12, 15, 16, 17

iv

*Knight v. Red Door Salons, Inc.*,
2009 U.S. Dist. LEXIS 11149 (N.D. Cal. 2009) ........................................... 6

*Kona Enters. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) ........................................................................ 3

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) ............................................................ 5, 7, 8, 21

*Louie v. Kaiser Found. Health Plan, Inc.*,
No. 08cv0795 IEG RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ...................... 24

*Martin v. AmeriPride Servs.*,
No. 08cv440-MMA(JMA), 2011 WL 2313604 (S.D. Cal. June 9, 2011) ................. 14

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ......................................................................... 9

*Mathis v. Spears*,
857 F.2d 749 (9th Cir. 1988) ...................................................................... 19

*McPhail v. First Command Fin. Planning, Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ........................... 6, 7

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ................................................................................. 3

*Mills v. Elec. Auto–Lite Co.*,
396 U.S. 375 (1970) ................................................................................... 23

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................ 23

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 13

*Natural Gas Anti-Trust Cases*, I, II, III & IV,
Case Nos. 4221, 4224, 4226, 4228, 2006 WL 5377849
(Cal. Super. Ct. Dec. 11, 2006) ................................................................. 21

*Nigh v. Humphreys Pharmacal, Incorporated*,
No. 12-CV-2714-MMA (DHB), 2013 WL 399179 (S.D. Cal. Jan. 29, 2013)............. 1

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ...................................................................... 4

*PLCM Group Inc. v. Drexler*,
22 Cal. 4th 1084 (2000) ............................................................................. 17

v

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

*Prudential-Bache Energy Income P'ships Sec. Litig.*,
    1994 WL 202394 (E.D. La. May 18, 1994) ................................................................. 8

*Rader* v. *Thrasher*,
    57 Cal. 2d 244 (1962) ........................................................................... 12

*Razilov v. Nationwide Mut. Ins. Co.*,
    No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ........................... 24

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948, 958 (9th Cir. 2009)
    *aff'd in part and rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009) ............. 23, 24

*Romero v. Producers Dairy Foods, Inc.*,
    2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) .................................... 6, 7

*Salton Bay Marina Inc. v. Imperial Irrigation Dist.*,
    172 Cal. App. 3d 914 (1985) ................................................................. 17

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
    155 Cal. App. 3d 738 (1984) ................................................................. 21

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ................................................................. 16

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) ................................................................. 4, 5, 17

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) ................................................................. 18

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
    No. 94-CV-0403(JG), 2002 WL 2003206 (E.D. N.Y. Aug. 1, 2002) ....................... 23

*Singer v. Becton Dickinson & Co.*,
    No. 08-CV-821-IEG(BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............... 24

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................. 4, 5

*Steiner v. Am. Broad. Co., Inc.*,
    Case No. 05-55773, 2007 WL 2460326 (9th Cir. Aug. 29, 2007) ........................... 21

*SternwestCorp. v. Ash*,
    183 Cal. App. 3d 74 (1986) ................................................................. 21

*Sundance v. Municipal Court*,
    192 Cal. App. 3d 268 (1987) ................................................................. 17

vi

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES in support of MOTION FOR APPROVAL OF
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

*Tasso Koumoulis v. LPL Fin. Corp.*,
   2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010) ......................................... 5

*Thornberry v. Delta Air Lines*,
   676 F.2d 1240 (9th Cir. 1982), *remanded on other grounds*, 461 U.S. 952 (1983)... 23

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)........................................................................................... 5

*Touhey v. U.S.*,
   No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036 (C.D. Cal. July 25, 2011) .... 14

*Trustees of Const. Industry & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) .................................................................................... 17

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990)....................................................................................... 18

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. Aug. 16, 1995) ......................................................... 6, 24

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977)......................................................................................... 4

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................... 3, 5, 9, 21

*Wershaba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ....................................................................................... 21

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026, 1027 (9th Cir. 1997) ............................................................................ 9

**Statutes**

21 U.S.C. § 352(a) ............................................................................................................ 11

28 U.S.C. § 1920 .............................................................................................................. 22

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 11

Cal. Bus. & Prof. Code § 17500 ...................................................................................... 11

Cal. Civ. Code § 1021.5 ..................................................................................................... 3

Cal. Civ. Code § 1750 ................................................................................................. 4, 11

Cal. Civ. Code § 1780(e) ................................................................................................... 3

Cal. Health & Safety Code § 111330 .............................................................................. 11

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

**Rules**

Fed. R. Civ. P. 23(e)(1)(C) ................................................................ 2

Fed. R. Civ. P. 23(h) .................................................................... 1, 2

Fed. R. Civ. P. 52(a) ...................................................................... 2

Fed. R. Civ. P. 54 ........................................................................ 22

Fed. R. Civ. P. 54(d)(1) ............................................................. 2, 22

Fed. R. Civ. P. 54(d)(2)(C) .............................................................. 2

Fed. R. Civ. P. 58(a)(3) ................................................................... 2

**Other Authority**

Alba Conte, Attorney Fee Awards (2d ed. 1993) ................................... 22

Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs:
   An Empirical Study, 53 U.C.L.A. Rev. 1303 (2006) ................................ 23

Fed. Judicial Ctr., Manual for Complex Litig. (Fourth) 2004 ................... 2, 3

Manual For Complex Litig. at § 14.122 ............................................. 16

Herbert B. Newberg, Attorney Fee Awards, § 2.19: Costs Reimbursement in Common
   Fund Fee Determinations (1986) ................................................. 22

Newberg and Conte, Newberg on Class Actions §14.6 (4th ed. 2007) .............. 6

Posner, Economic Analysis of Law (4th ed. 1992) ................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This Motion comes before the Court pursuant to Federal Rule of Civil Procedure 23(h) and the Orders Preliminary Approving Class Action Settlement, Certifying the Class, Providing for Notice and Scheduling Order entered on January 23 and 29, 2013. Dkt. Nos. 11 & 13 (collectively, "PA Order"). *See also Nigh v. Humphreys Pharmacal, Incorporated*, No. 12-CV-2714-MMA (DHB), 2013 WL 399179 (S.D. Cal. Jan. 29, 2013). Class Counsel was ordered to file an application for attorneys' fees and costs and class representative incentive award by August 1, 2013. *Id.* at *4.

The Court should, respectfully, award attorneys' fees to Class Counsel in the amount of $420,000, which represents a modest upward adjustment to 30% from the Ninth Circuit's "benchmark" of 25% in common fund cases, based on the relevant factors and considering the exceptional results Class Counsel achieved for the Class.

The exceptional nature of the result is supported by a Citizen Petition to the Food and Drug Agency (FDA), requesting a FDA disclaimer on homeopathic drugs similar to the FDA disclaimer achieved here without the need for agency action, *plus* three other modes of injunctive relief, all of which will ensure that consumers are not mislead about the nature of the Products and provide consumers with an informed choice. *See* Decl. of Ronald A. Marron filed concurrently herewith ("Marron Fee Decl.") ¶ 2 & Ex. 1. The reasonableness of the fee requested is supported by a lodestar cross-check with multiplier of 1.59, even without including the value of the injunctive relief obtained. For example, adding Defendants' $310,000 estimated cost of implementing the injunctive relief to the $1.4 million monetary fund provides a rough approximate settlement value of $1,710,000, in which case Class Counsel's fee request is just 24.5%. *See* Kubow Decl. ¶ 8 (Dkt. No. 9-3).

The Class also seeks reimbursement of $9,021.20 costs, as provided by statute and which were otherwise reasonably necessary to successfully prosecute this action.

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

Finally, the Court should, respectfully, award an incentive payment to Class Representative Melissa Nigh, who initiated this action and assisted with its successful prosecution, in the amount of $3,500.

## II.  STANDARD OF REVIEW

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The fee awarded must be "reasonable."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("*In re Bluetooth*").  The decision to award attorneys' fees "is committed to the sound discretion" of the court, and should be based on "the unique contours of the case."  Fed. Judicial Ctr., Manual for Complex Litig. (Fourth) § 14.121 (2004) ("Manual for Complex Litig.").  In a class action, the court follows Rule 23(h), and the "fundamental focus is the result actually achieved for class members." *Id.* at § 21.71 (citing Fed. R. Civ. P. 23(h) committee note).

Notice to the class of an attorney's fees motion is required, which is ordinarily accomplished in a settlement class by including information about the hearing and motion within the class notice itself.  *See* Fed. R. Civ. P. 23(e)(1)(C).  Counsel for the class may also move for costs, if they are a prevailing party.  *See* Fed. R. Civ. P. 54(d)(1).

The judgment on attorney's fees and costs must describe the bases for the Court's order, including findings of fact and conclusions of law.  *See also* Manual for Complex Lit., § 14.232; Fed. R. Civ. P. 52(a), 54(d)(2)(C); 58(a)(3) (a separate judgment for fees is not required).

## III.  ARGUMENT

Here, the Court should, respectfully, award reasonable attorney's fees of $420,000, plus costs of $9,021.20.  The Court should also award the Class Representative Melissa Nigh a modest incentive award of $3,500.

2

**A.      Bases for an Award of Attorney's Fees and Expenses**

In contrast to the "American Rule," where each party bears its own attorney's fees and costs, attorney's fees are appropriately awarded to one party where one of three situations exists:   (1) where "fee-shifting is expressly authorized by the governing statute;" (2) where "the successful litigants have created a common fund for recovery;" or, (3) where the successful litigant has "extended a substantial benefit to a class."  *In re Bluetooth*, 654 F.3d at 941 (citing and quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)) (internal quotations omitted).   "An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1025 (9th Cir. 2003); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000); *Farmers Ins. Exch. v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("The task of a federal court in a diversity action is to approximate state law [regarding attorneys' fee awards] as closely as possible to make sure that the vindication of the state right is without discrimination because of the federal forum.").

California has two fee-shifting statutes applicable to this action – the Consumer Legal Remedies Act (Civ. Code § 1750, *et seq*., "CLRA") and the private attorney general statute (Civ. Code § 1021.5).  Under the CLRA, the "court *shall award* court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  Cal. Civ. Code § 1780(e) (emphasis added).   "[T]he availability of costs and attorney's fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute."   *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009) (quoting *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999)) (quotation marks omitted). *See also* Manual for Complex Litig. § 14.13 ("Shifting fees in a statutory-fee case serves the public policy of encouraging private enforcement of statutory or constitutional rights.").  Under the private attorney general statute, Nigh is a "successful

3

party," whose action "has resulted in the enforcement of an important right affecting the public interest."  *See* Civ. Code § 1021.5.  Nigh is also a "prevailing party" under the CLRA because she achieved most, if not all, of the relief sought in her Complaint.  *See* Dkt. No. 1; Civ. Code § 1780(e).

In addition, California courts have long had the equitable power to award reasonable attorneys' fees where a named plaintiff secures a "substantial benefit" for a class of persons.  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977) (discussing "substantial benefit theory").  Equity supports a fee award in this case because class actions serve the policy goals of efficient judicial management, by setting a procedure whereby one judgment covers all claimants, ensuring that the rights of citizens are upheld even where their individual claims are relatively small, such that an attorney would be unlikely to accept the financial risk of individual representation.  *See Keating v. Super. Ct.*, 31 Cal. 3d 584, 609 (1982); *Serrano*, 20 Cal. 3d at 34.  "[I]t is well settled that the lawyer who creates a common fund is allowed an *extra* reward, so that he might share the wealth of those upon whom he has conferred a benefit."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977);

Finally, California recognizes the "common fund theory," which holds "that one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs."  *Serrano*, 20 Cal. 3d at 35; *see also In re Bluetooth*, 654 F.3d at 941.

**B.**   **The Court should Apply the Percentage of the Fund Method to Determine Class Counsel's Reasonable Fee**

The Ninth Circuit approves "two separate methods for determining attorneys' fees," the percentage and lodestar/multiplier methods.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  However, federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage of the recovery method.  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

4

"While the court has discretion to use either method, 'the primary basis of the fee award remains the percentage method.'"   *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116 (C.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1050).

Likewise, California recognizes the percentage of recovery where a known, quantifiable monetary fund is established for class members.   *See Serrano*, 20 Cal. 3d at 35; *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000) ("Percentage fees have traditionally been allowed in . . . common fund cases."); *id.* at 48 (percentage of benefit method is result-oriented rather than process oriented); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996) (recognizing that the percentage method is appropriate where "the amount was a 'certain or easily calculable sum of money'") (citing *Serrano*, 20 Cal. 3d at 35); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008)).   The percentage method focuses on the benefit conferred on the class resulting from the efforts of counsel.  *See id.*

## C.   Class Counsel's Fee Request of 30% of the Common Fund is Fair and Reasonable

In evaluating an attorney fee request, including an upward adjustment from the 25% benchmark, the Ninth Circuit weighs various factors, including: "(1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) the skill of counsel; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar."   *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS 13627, at *26 (C.D. Cal. June 10, 2005).   Courts also often consider the awards of attorney fees in similar cases.  *E.g.*, *Tasso Koumoulis v. LPL Fin. Corp.*, 2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010) (citing *Vizcaino*, 290 F.3d at 1048-50).

### 1.  Fees Totaling 30% of a Common Fund Are Often Upheld As Reasonable

The Ninth Circuit has "established 25% . . . as the 'benchmark' award for attorney fees."   *See*, *e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers*, 904 F.2d at 1311.   "However, in most common fund

5

cases, the award exceeds that benchmark.'" *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. 2009) ("nearly all common fund awards range around 30%") (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989)).

"Cases of under $10 million will often result in result in fees above 25%." *Craft*, 624 F. Supp. 2d at 1114 (citing *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995)). *See also In re First Fidelity Bancorp. Sec. Litig.*, 750 F. Supp. 160, 163 (D.N.J. 1990) ("cases with total awards below $12 million . . . showed fee awards at percentages of 25% or above") (citing *In re TSO Fin. Litig.*, No. 87-7903, 1989 U.S. Dist. LEXIS 8253 (E.D. Pa. July 17, 1989), slip op. at App'x).

While 25% is the benchmark, district courts have granted, and the Ninth Circuit has affirmed, awards of attorneys' fees at or above a 30% fee. *See*, *e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of one third of fund); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of settlement fund as fees); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544, at *20-21 (S.D. Cal. Mar. 30, 2009) (awarding 30% for first $10 million and 25% for additional $2 million settlement). "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 13, 2007) (citing Newberg and Conte, NEWBERG ON CLASS ACTIONS §14.6 (4th ed. 2007)).

Furthermore, in individual contingency cases, "attorneys 'regularly contract for . . . fees between 30% and 40%.'" *Craft*, 624 F. Supp. 2d at 1124 (quoting *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005)). "Given the unique reliance of our legal system on private litigants to enforce substantive provisions of the law through class . . . actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those

6

negotiated . . . in the legal marketplace." *Lealao*, 82 Cal. App. 4th at 47.  Accordingly, the trial court has the discretion to use a multiplier as "necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at 50.  Thus, "a 33% fee award is both reasonable, and in line with the general market for contingent fee work." *Craft*, 624 F. Supp. 2d at 1124 (citation omitted). *See also In re Activision Sec. Litig.*, 723 F. Supp. at 1375 ("Adoption of a policy of awarding approximately 30% . . . as attorneys' fees in the ordinary case is well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable.").

The requested award here is similar to those awarded in class actions by California courts.  *See*, *e.g.*, *In re Public Serv. Co. of N.M.*, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) (awarding 33.3%); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991) (awarding 33.3%); *McPhail*, 2009 U.S. Dist. LEXIS 26544, at *20-21 (awarding 30% for first $10 million and 25% for additional $2 million settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 454 (approving an award of 33.3% plus costs); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (awarding 33%); *Romero*, 2007 U.S. Dist. LEXIS 86270 (awarding a fee of 33% plus costs); *In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992) (awarding 30% plus costs); *In re Activision Sec. Litig.*, 723 F. Supp. at 1373 (awarding 32.8% plus costs); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627 (awarding 33.3%); *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, MDL Case No. 05-1671 CAS (VBK) (C.D. Cal. Nov. 24, 2008) (awarding 33.3% plus costs); *Harris v. Brinkerhoff*, No. 90-3100-DT(JRx) (C.D. Cal. Feb. 21, 1995) (awarding 35% plus costs); *Jack v. Hartford Fire Ins. Co.*, 3:09-CV-1683-MMA (JMA), 2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) (awarding 30% plus costs); *Cohorst v. BRE Props., Inc.*, 10-CV-2666 JM (BGS), 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) (awarding 28% in fees, and defendant agreed not to contest fee application).

7

*Nigh v. Humphreys, Incorporated*, No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

In addition, a 30% fee based on the percentage of recovery method is consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fees with their clients. *See, e.g.*, *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010) ("The requested fee of 33 1/3% is also consistent with a privately negotiated contingent fee in the marketplace."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, [Lead Counsel] routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (concurring opinion) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

## 2. An Award of 30% of the Common Fund is Reasonable in this Case

### a. The Exceptional Results Obtained

In determining the reasonableness of attorney fees, "the most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983); *see also Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 475 (1984); *Lealao*, 82 Cal. App. 4th at 40. In the legal marketplace, law firms that obtain exceptional results for their clients can and do expect that those exceptional results will be reflected in their fees.

As a result of Class Counsel's thoughtful and thorough negotiations, Defendants agreed to change the advertising and labeling of their Products in four significant aspects, which amounts to injunctive relief that will provide a significant social benefit. Plaintiff claimed that Defendants labeled and marketed their Products with misleading and false claims, such as, that the Products contain "no animal ingredients," when they did contain animal ingredients; were "natural" when the Products contained non-natural

8

ingredients; were effective for various ailments, when consumers are allegedly unaware of the high degree to which homeopathic drugs are diluted; and were marketed next to allopathic, FDA label approved OTC drugs, when the Products undergo no premarket FDA review of labeling claims at all.  *See* Compl.; Settlement Agreement § 4; Marron Fee Decl. ¶ 2 & Ex. 1.

Further, even though Defendants may have implemented some labeling changes after they received Ms. Nigh's CLRA letter, the injunctive relief attained by Class Counsel goes beyond the initial modest labeling changes.  *See* Settlement Agreement § 4; *compare* Second Kubow Decl. (referenced in Dkt. No. 19 at 3:18-19).   Further, Defendants' efforts to remove the Products with old labeling from store shelves and conduct a rebate program were flawed in that old labeling remained online and on physical store shelves three months after the recall efforts, and notice to potential class members included the wrong telephone number.  Marron Decl. ¶ 3 & Ex. 2.  Ultimately, by reducing the requirements of modified labeling, notice, and monetary refunds into terms of a Settlement Agreement, and Final Judgment and Order, the Class will receive definite and certain protection.  *See id.*

In determining the amount of the benefit conferred, the appropriate measure is the total recovery available for the class, not the amount actually claimed by class members.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).  This method recognizes that the efforts of class counsel established the entire settlement, including nonmonetary benefits, for the benefit of the entire class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance.").

Here, the cost to Defendant to implement the injunctive relief is estimated at $310,000, which provides a touchstone for the potential benefit to the Class of less deceptive product labeling.  *See* Kubow Decl. (Dkt. No. 9-3) ¶ 6.  In addition, the

9

Settlement Agreement established a common fund of $1.4 million.   Settlement Agreement § 4.2 at p. 12.  Even when viewed in light of expected payments to the Class in the amount of $402,972.91, which is not the standard that applies, *see Boeing Co.*, 444 U.S. at 480-81, Class Counsel's requested fee award of $420,000 is almost identical to the monetary relief to be paid directly to the Class, notwithstanding the value of the injunctive relief in the form of labeling changes.  *See* Sherwood Decl. ¶ 20.  The monetary refunds portion of the Settlement therefore support the exceptional results obtained.  Further, counsel achieved the Settlement without trial and extended litigation, which would only have increased the fees and costs ultimately borne by the Class.  Counsel should be justly rewarded for obtaining relief in a timely and efficient manner.

### b.  The Effort, Skill and Experience of Class Counsel

As a condition of settlement, Plaintiff required Defendants abstain from claiming in their Products' labeling and advertising that their Products or any of their ingredients are natural when the Products contain non-natural ingredients; refrain from claiming the Products have no animal ingredients when animal ingredients are present in the Products; carry a FDA Disclaimer that will alert consumers of the difference between these drugs and OTC allopathic drugs that carry FDA-approved labels; bear a Dilution Disclaimer that corresponds to a Dilution Webpage, all of which will inform consumers of the ultra-high degree of dilution of the ingredients in the Products.  Settlement Agreement § 4.

Further, this injunctive relief is unlimited in time, in that Defendants are bound to abide by these labeling changes unless the FDA issues a regulation that requires differently.  *Id.* § 4.1.10.  Given the lack of response to citizen petitions over the years, which have requested almost identical disclaimers as achieved here, it is unlikely that OTC homeopathic drugs will bear any disclaimers at all unless they are achieved through voluntary industry changes or settlement agreements such as the one presented for final approval here.  *See* Marron Fee Decl., Ex. 1.

10

Plaintiff also required, as a settlement condition, that Defendants provide a link to the FDA Compliance Policy Guide on its web site, and to ensure that all advertising that depicts a legible version of the labeling contain the revised labeling disclaimers set forth in the Settlement Agreement.  Settlement Agreement § 4.1.4.4.  The foregoing, plus the substantial monetary relief fund, achieves the result Plaintiff sought via her Complaint, to halt deceptive advertising, require truthful disclosure of the Products' characteristics, and compensate those whose money may have been derived by deceptive means.

### c.  The Complexity of the Issues

Plaintiff's claims involved a very complex statute—the FDCA and its implementing regulations, set forth in the Code of Federal Regulations—the FDCA's legislative history, numerous amendments to the FDCA, Federal Trade Commission advertising standards, common law theories, California statutory requirements for bringing CLRA, UCL and FAL actions, and the scientific properties of Defendants' homeopathic Products.  The issues raised in this action do not fit within any specific area of the law, as the FDCA and the California Sherman Law both prohibit drug labeling that is false or misleading in any manner.  *See*, *e.g.*, 21 U.S.C. § 352(a); Cal. Health & Safety Code § 111330.  The CLRA, UCL and FAL also prohibit any unfair, deceptive or fraudulent business advertising.  *See* Cal. Civ. Code § 1750, *et seq.*, Cal. Bus. & Prof. Code §§ 17200, 17500.  Understanding the way the various pieces of this multi-statute action fit together is one of the special areas of expertise of Class Counsel. Marron Fee Decl. ¶¶ 4, 8-12.

The issues in this case were not just complex, but were also novel, as there is scant authority on the requirements of OTC homeopathic drug manufacturers.  *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 590, n.4 (C.D. Cal. 2011) (regarding CLRA, UCL and FAL claims about OTC homeopathic drug, and observing that "this action concerns novel legal theories in a specialized area of law").  Class Counsel are

experienced in a specialized field of analyzing the FDCA and its implementing regulations, including the legislative history behind the statute and its many amendments over the years. *See* Marron Decl. ¶¶ 4, 8-12.

> d. *Risk of Non-Payment, Preclusion of Other Employment and Ongoing Work*

Devoting more than 464 attorney and staff hours and substantial costs necessarily precluded other employment for Class Counsel. There was significant risk that Class Counsel, despite committing substantial resources toward prosecution of this action, would not have received any compensation for its services. And, Class Counsel's ability to collect compensation was entirely contingent upon it prevailing. When attorneys undertake litigation on a contingent basis, a fee that is limited to the hourly fee that would have been paid by a fee-paying client, win or lose, is not a reasonable fee by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-29 (2002). Without the incentives of a premium for risk, most attorneys will not accept cases on a contingency basis.

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-1133 (Cal. 2001) (quoting Posner, *Economic Analysis of Law* at 534, 567 (4th ed. 1992)); s*ee also Rader* v. *Thrasher*, 57 Cal. 2d 244, 253 (1962). Risk multipliers, therefore, are "intended to approximate market level compensation for . . . services, which typically includes a premium for risk of nonpayment or delay in payment of attorney fees." *Ketchum,* 24 Cal. 4th at 1138.

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

From the outset of this litigation to the present, Class Counsel litigated this matter on a contingent basis and placed their own resources at risk to do so. Because the fee in this matter was entirely contingent, the only certainty was that Class Counsel would not get paid unless they obtained a successful result. *See id.* Absent the Settlement, there was a sizeable risk that Plaintiff, the Settlement Class, and their counsel would obtain no recovery at all. Indeed, there was no guarantee that Plaintiff would succeed on class certification, summary judgment, trial or appeal. *See id.* At no time have Defendants conceded liability, the appropriateness of class certification, or the availability of relief. Despite this uncertainty, Class Counsel obtained an excellent result on behalf of the Class.

Moreover, Class Counsel's work is not yet done. Class Counsel still need to: (1) prepare for and attend the final approval hearing, including the research and drafting of the reply papers and responses to objectors, if any; (2) oversee the claims administration process, including addressing any claim review issues and monitoring payments to the Settlement Class; (3) monitor the distribution of any cy pres funds remaining after all claims have been paid, if any; (4) handle any appeals; (5) disburse incentive awards and Class Counsel's fees and expenses.[1]

### e. Reaction of the Class

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. *See Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class

---

[1] Due to the need to close billing entries for purpose of tabulation, not included in Class Counsel's lodestar are two days of drafting, editing and briefing this Motion, the Motion for Final Approval, and those Motions' supporting declarations (July 31-Aug. 1, 2013). Those hours are encompassed in the estimated 150 post-application hours included in Appendix 1 attached hereto.

13

settlement action are favorable to the class members."); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

Here, Class Notice was timely implemented as ordered by the Court.  *See* PA Order; Decl. of Markham Sherwood of Gilardi & Co. in Supp. of Mot. for Final Approval, filed concurrently herewith ("Sherwood Decl.") ¶¶ 2-15.   To date, no member of the Class has objected to the Settlement, and only one person has requested exclusion.   Sherwood Decl. ¶¶ 17-18.   Although Plaintiff acknowledges that the objection deadline is not until September 3, 2013, "[t]he absence of any objector" thus far "strongly supports the fairness, reasonableness, and adequacy of the settlement." *Martin v. AmeriPride Servs.*, No. 08cv440-MMA(JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Touhey v. U.S.*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *8 (C.D. Cal. July 25, 2011) (same).   In sum, the reaction of the Class to the Settlement, including its provision providing that up to 30% of the Settlement Fund may be sought for attorney's fees, is overwhelmingly positive and supports a finding that the requested fees are fair, reasonable, and adequate.

### f.  Bluetooth Factors

In addition to the above factors are the three factors articulated in *In re Bluetooth*, 654 F.3d at 944:  (1) whether the lawyers' fees are disproportionate to the class recovery; (2) whether the settlement includes a "clear sailing" agreement for fees; and (3) whether any unclaimed recovery amounts revert to the defendant.  All three factors are absent in this case, supporting the reasonableness of the fee requested.

Here, Class members can attain up to $100 per claimant with receipts, and up to $50 for claimants who no longer have receipts but sign a claim form under penalty of perjury.  *See* Settlement Agreement § 4.3.2.  The monetary payments that will be made to Class claimants is estimated at $402,972.96.  *See* Mot. for Final Approval; Sherwood

14

Decl. ¶ 20.   Requested attorney's fees of $420,000.00 is not out of proportion to the Class recovery, but almost identical to it.  *See id.*  The Settlement Agreement does not include a "clear sailing" provision, in that Defendants are free to challenge any fee requested in excess of 30% of the Fund.   Settlement Agreement § 9.1.   By limiting Defendants' challenges to just that part of a fee request that grossly exceeds the benchmark in this Circuit, this provides a benefit to the Class, in limiting unnecessary motion practice for what is already considered a reasonable fee for a common fund class.   *See id.*   And, none of the unclaimed fund reverts to Defendants; rather, the Settlement Agreement provides that unclaimed funds, if any, shall be distributed 50% to the Class in a supplemental distribution and 50% for cy pres relief.  *See id.* § 4.3.5.

### g.   The Lodestar/Multipler Crosscheck

"Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark."  *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 07 CV 2245 MMA, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (citing *Craft*, 2008 U.S. Dist. LEXIS 27526, at *24 ("A lodestar crosscheck is not required in this circuit.")); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3rd Cir. 2005) ("the lodestar cross-check does not trump the primary reliance on the percentage of common fund method").   Because Class Counsel requests slightly more than the 25% benchmark, a lodestar analysis is provided below, should the Court wish to verify not only the reasonableness of the fee requested but the reasonableness of an increase above the benchmark.  *See id.*

The lodestar is calculated by analyzing "all the hours reasonably spent, including those relating solely to the fee," multiplied by reasonable hourly rates.  *Ketchum*, 24 Cal. 4th at 1133; *see also Hensley*, 461 U.S. at 433.   That figure is then augmented or multiplied to reflect additional factors that must be considered in determining a reasonable attorney fee award.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Ketchum*, 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a fee bearing case; it does not include any compensation for contingent

15

risk extraordinary skill, or any other factors a trail court may consider"). Here, Class Counsel's lodestar is $264,005.00, based on 614.2 total hours of work (352.50 attorney hours, 96.8 law clerk hours, 14.9 paralegal hours and 150 blended pre- and post-application attorney hours). The lodestar is summarized in Appendix 1 attached hereto, and is supported by evidence that the rates and hours are fair and reasonable. *See also* Marron Fee Decl. ¶¶ 4-20, Exs. 3-5.

<u>i. Class Counsel's Rates Are Reasonable</u>

Class Counsel's rates are reasonable because they are in line with hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *See Ketchum*, 24 Cal. 4th at 1133; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984); Marron Fee Decl., Ex. 5. Courts look to prevailing market rates in the community in which the court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Class Counsel's current rates are also reasonable because they are in line with the prevailing rates for other attorneys practicing complex civil litigation in San Diego. *See* Manual For Complex Litig. at § 14.122 ("The rate should reflect what the attorney would normally command in the relevant marketplace."); Marron Fee Decl., Ex. 5.

Here, Class Counsel's requested rates are as follows:

| Attorney | Position | Hourly Rate |
|---|---|---|
| Ronald A. Marron | Partner | $680 |
| Skye Resendes | Associate | $400 |
| Alexis Wood | Associate | $385 |
| Kas Gallucci | Associate | $385 |
| Erin Minelli | Associate | $385 |
| Maggie Realin | Associate | $375 |
| Post Bar Law Clerk and Patent Agent/Law Clerk | | $280 |
| Law Clerks | | $245 |
| Paralegals and Legal Assistants | | $215 |

16

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Class Counsel attaches as Exhibit 5 to the Marron Fee Declaration portions from the published National Law Journal 2011 Law Firm Billing Survey; a rate analysis for partners and associates in the Southern California area, compiled by summarizing the NLJ 2011 Survey only as to Southern California firms; and a Summary reflecting the market rate increase in Southern California from 2010 to 2011 for partners and associates created by analyzing the 2010 NLJ Survey to the 2011 NLJ Survey. Counsel's requested attorney rates for 2013 fall within the average prevailing market rates within the community. *See id.*

Class Counsel also seeks compensation for its support staff, such as paralegals and law clerks, which recovery is permitted in this legal community. "The key . . . is the billing custom in the relevant market. Thus, fees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is the prevailing practice in a given community. . . . Indeed, even purely clerical or secretarial work is compensable if it is customary to bill such work separately, . . ." *Trustees of Const. Industry & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). In California, it is customary and reasonable to bill for all non-attorney support staff, even word processors. *Serrano*, 20 Cal. 3d at 35; *Ketchum*, 24 Cal. 4th at 1122; *PLCM Group Inc. v. Drexler*, 22 Cal. 4th 1084 (2000). In *Salton Bay Marina Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914 (1985), the Court of Appeal stated that "necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney fees." Indeed, even unpaid law clerk interns can be billed.[2] *Sundance v. Municipal Court*, 192 Cal. App. 3d 268 (1987) ("[I]t is now clear that the fact that services were volunteered is not a

---

[2] All of Class Counsel's law clerks are paid hourly wages; none are volunteers.

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD

ground for diminishing an award of attorneys' fees. . . .[T]he amount of the award is to be made on the basis of the reasonable market value of the services rendered, and not on the salary paid.") (citing *Serrano v. Unruh*, 32 Cal. 3d 621 (1982)).

**Rates Other Courts Have Awarded.** Class Counsel's declaration regarding prevailing fees in the community and "rate determinations in other cases, particularly those settling a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see* Marron Fee Decl. ¶¶ 14-20 & Ex. 5.

On March 13, 2013, the Honorable David O. Carter of the Central District of California awarded Mr. Marron fees of $680 per hour, Ms. Resendes fees of $400 per hour, and Ms. Realin fees of $375 per hour in a dietary supplement consumer fraud class action case; and also approved $245 per hour for law clerks and $215 hourly rates for support staff such as paralegals. *Bruno v. Quten Research Inst., LLC*, No. 8:11-cv-00173-DOC-E, 2013 WL 990495, at *4-5 (C.D. Cal. Mar. 13, 2013) ("Class Counsel, . . . the Law Offices of Ronald A. Marron displayed competence and diligence in the prosecution of this action, and their requested rates are approved as fair and reasonable."); *see also id.* at *4 ("The Court notes that, in addition to the monetary relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case. New labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products."). *See also* Marron Fee Decl. ¶ 16.

On October 31, 2012, the Honorable John A. Houston of the Southern District of California awarded Mr. Marron fees of $650 per hour, Ms. Resendes fees of $385 per hour, and Ms. Realin fees of $375 per hour in a homeopathic drug consumer fraud class action case. *Gallucci v. Boiron, Inc.*, No. 11cv2039 JAH (NLS), 2012 WL 5359485, at *9 (S.D. Cal. Oct. 31, 2012) ("The Court finds the [foregoing] hourly billing rates reasonable in light of the complexity of this litigation, the work performed, Class

18

Counsels' reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market."). *See also* Marron Fee Decl. ¶ 16.

On August 21, 2012, the Honorable Thomas J. Whelan awarded Mr. Marron fees of $650 per hour, and approved the rates of his associate attorneys, Ms. Resendes at $385 per hour and Ms. Realin at $375 per hour, in the consumer dietary supplement class action of *Burton v. Ganeden*, No. 11-cv-1471 W (NLS), Dkt. Nos. 52, 48, 45. Marron Fee Decl. ¶ 16.

On July 9, 2012, the Honorable Marilyn L. Huff awarded Mr. Marron fees of $650 per hour, and approved the rates of his associate attorneys, Ms. Resendes at $385 per hour and Ms. Realin at $375 per hour, in the consumer food class action of *In re Fererro*, Case No. 3:11-cv-00205 H (KSC) (S.D. Cal.), Dkt. No. 127. Judge Huff noted that the fees requested were "appropriate given the contingent nature of the case and the excellent results obtained for the Class, and because no enhancement or multiplier was sought above the actual amount of Class Counsel's lodestar.  The Court concludes the billing rates used by Class Counsel to be justified by prior awards in similar litigation and the evidence presented with their motion showing these rates are in line with prevailing rates in this District."  Marron Fee Decl. at ¶ 5.

In March 2011, the Honorable Janis L. Sammartino awarded Mr. Marron fees based on a discounted hourly rate of $595.  *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, 2011 U.S. Dist. LEXIS 21824, at *31 (S.D. Cal. Mar. 3, 2011).  Despite being of similar seniority and experience, Mr. Marron, at the request of and in deference to his co-counsel, reduced his request to $595.  Marron Fee Decl. ¶ 16.

**Survey Data.**   "Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees*."  B-K Lighting, Inc. v. Vision3 Lighting*, 2009 U.S. Dist. LEXIS 111968, at *18 (C.D. Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)).  A National Law Journal survey confirms that Class Counsel's rates are reasonable and consistent with the rates charged by both plaintiff

19

and defense firms, based on survey data from law firms in Southern California and around the country. *See* Marron Fee Decl., Ex. 5.

**Blended Rate.**  The reasonableness of Class Counsel's rates is also shown by its blended lodestar, calculated by taking the total lodestar and dividing it by the total hours of all attorney timekeepers.  The blended rate in this case is $465.74 ($164,172.50 divided by 352.50 attorney hours).  This compares favorably to blended lodestar rates approved in other actions.  *See id.* ¶ 19.

### ii.  Class Counsel's Hours Expended are Reasonable

Class Counsel is entitled to be compensated for reasonable time spent at all points in the litigation.  Courts should avoid engaging in an "ex post facto determination of whether attorney hours were necessary to the relief obtained."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Id.*

Here, Class Counsel expended a total of 352.5 attorney hours, 96.8 law clerk hours, and 14.9 support staff hours, excluding the final two days of preparing this Motion, the Motion for Final Approval, it supporting declarations, and post-application work, all conservatively estimated at 150 "post-application" hours at a blended attorney rate.  *See* Marron Decl. ¶ 22.  This includes, among other tasks, time billed for investigating the claims and drafting pleadings; extensive negotiations and settlement discussions, including attending mediation conferences; drafting disclaimer language, settlement and release language; ascertaining the scope and breadth of the class and analyzing Rule 23 elements; preparing for and participating in meetings and discussing strategy; due diligence document review; and communications and meetings among parties and counsel.  Mr. Marron's time, as senior counsel with the most experience and highest billing rate, was kept to a minimum, with the majority of the fees requested being based on associate work performed at lesser rates.  Counsel should be

compensated for all hours claimed, which are documented and based on contemporaneous time records. *See* Marron Fee Decl. ¶ 21.

<u>iii.  A Multiplier of 1.59 is Reasonable</u>

In determining an appropriate multiplier, courts consider "a host of 'reasonableness' factors, 'including quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *In re Bluetooth*, 654 F.3d at 941-942 (quoting *Hanlon*, 150 F.3d at 1029).  The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar services under these circumstances. *See San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation).

"Multipliers can range from 2 to 4, or even higher." *Wershaba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001).  The court in *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12.  *See also Natural Gas Anti-Trust Cases*, I, II, III & IV, Case Nos. 4221, 4224, 4226, 4228, 2006 WL 5377849, at *4 (Cal. Super. Ct. Dec. 11, 2006) ("This Court and numerous cases have applied multipliers of between 4 and 12 to counsel's lodestar in awarding fees."); *SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Steiner v. Am. Broad. Co., Inc.*, Case No. 05-55773, 2007 WL 2460326, at *2 (9th Cir. Aug. 29, 2007) (multiplier of 6.85); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5).  In cases

21

*Nigh v. Humphreys, Incorporated,* No. 3:12-cv-02714-MMA-DHB
Memorandum of Points and Authorities in support of Motion for Approval of
Attorneys' Fees, Costs and Incentive award

where, as here, "a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar." Alba Conte, Attorney Fee Awards (2d ed. 1993), § 2.06 at 39.

Here, Class Counsel request a total fee award of $420,000, resulting in a multiplier of 1.59 if the lodestar method were used, which is well justified and within the range of those approved in other cases. *See* App'x 1 hereto; citations *supra*. The lodestar with minimal multiplier also supports the 30% common fund fee award requested. Indeed, "25% is substantially below the average class fund fee nationally," with 30-33.3% representing the national average for a common fund case. *Craft*, 624 F. Supp. 2d at 1125. In light the exceptional results obtained, the efficiency with which the case was litigated, the experience and reputation of counsel, the risks associated with litigating this action, the complexity and novelty of the issues presented, the substantial benefit to the class achieved, and the work on the final approval reply papers and hearing, settlement administration, and potential appeals still to be performed, a fee of $420,000 is fair and reasonable.

**D.     The Requested Costs are Fair and Reasonable**

In addition to being entitled to reasonable attorneys' fees, it is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable [attorneys] fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). "The reimbursement of taxable expenses in federal litigation is governed by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1365-66 (N.D. Cal. 1996). Rule 54(d) "entitles prevailing parties to collect taxable costs." *Id.* "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Id.* (citing Herbert B. Newberg, Attorney Fee Awards (1986) § 2.19: "Costs Reimbursement in Common Fund Fee Determinations," at 69; *Mills v. Elec.*

22

*Auto–Lite Co.*, 396 U.S. 375, 391–92 (1970)); *see also Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1245 (9th Cir. 1982), *remanded on other grounds*, 461 U.S. 952 (1983); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (noting that courts universally accept that "telephone charges, postage, transportation, working meals, photocopies, and electronic research, are reasonable and were incidental and necessary to the representation of the Class"); Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.").

Class Counsel has incurred $357.58 in recoverable costs, and $8,663.62 in costs reasonably necessary to conduct this litigation, which are summarized in Appendix 2. This includes $7,495.00 paid to Judicate West for two days of private mediation, which was instrumental in bringing the parties to settlement.  All of Counsel's expenses were reasonable and necessary for the successful prosecution of this case.  Accordingly, the Court should grant Class Counsel's request for $9,021.20 in costs.

**E.      The Requested Incentive Award is Fair and Reasonable**

Finally, Plaintiff respectfully requests that the Court approve an incentive award for Plaintiff Melissa Nigh in the amount of $3,500.  Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) *aff'd in part and rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009), and "serve an important function in promoting class action settlements," *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5 (E.D. N.Y. Aug. 1, 2002).  Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case.  *See In re Lorazapam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 369 (D. D.C. Feb. 1, 2002); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. Rev. 1303 (2006) (30% of class actions include incentive awards to class representatives).  Such awards "are intended to compensate class representatives for

23

work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-959.

Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). Here, Plaintiff respectfully requests a modest service award of $3,500 for Melissa Nigh in recognition of her contribution toward the successful prosecution of this case.

Ms. Nigh has been involved in this litigation since June 2012, and was instrumental in providing positive results for class members. She was significantly involved in this action from its inception to settlement, including reviewing court filings and rulings, having continuous communications with Class Counsel throughout the litigation, including being on stand-by during mediation of the action, and reviewing and approving the Settlement. *See* Declaration of Melissa Nigh, ¶¶ 2-7. Thus, the proposed award is justified in this case.

The proposed award is also well below those approved by other Courts in this Circuit. *See, e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ($25,000 award); *Van Vranken*, 901 F. Supp. at 300 ($50,000 award); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 WL 4473183, at *7 (S.D. Cal. Oct. 6, 2008) ($25,000 award); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ($12,000 award). Moreover, incentive awards are appropriate when a class representative will not benefit beyond ordinary class members. Here, Plaintiff has not received any unusual or extraordinary benefit, justifying her requested awards. *See Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *8 (D. Or. Nov. 13, 2006) (approving $10,000 incentive award for representative whose "only

24

personal benefit . . . from a successful result in this litigation is the . . . entitlement of any class member . . . together with the likelihood that any further [statutory] violations . . . would cease").

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court award Class Counsel $420,000 in attorneys' fees and $9,021.20 in expenses, and award Class Representative Melissa Nigh $3,500 for her time and effort in this litigation.

Dated: August 1, 2013

Respectfully Submitted,

*/s/ Ronald A. Marron*

RONALD A. MARRON

*ron@consumersadvocates.com*

**LAW OFFICES OF RONALD A. MARRON, APLC**

SKYE RESENDES

ALEXIS M. WOOD

651 Arroyo Drive

San Diego, California 92103

Telephone: (619) 696-9006

Facsimile: (619) 564-6665

***Class Counsel***

25

## APPENDIX 1: CLASS COUNSEL'S LODESTAR

**FEE LODESTAR (through July 30, 2013):**

| Firm and Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Law Offices of Ronald A. Marron, APLC:** | | | |
| Ronald A. Marron | 86.4 | $680 | $58,752.00 |
| Skye Resendes | 203.6 | $400 | $81,440.00 |
| Alexis Wood | 17.2 | $385 | $6,622.00 |
| Kas Gallucci (after 1/15/13) | 13 | $385 | $5,005.00 |
| Erin Minelli | 24.1 | $385 | $9,278.50 |
| Maggie Realin | 8.2 | $375 | $3,075.00 |
| Post-Bar Law Clerk (K. Gallucci, until 1/15/13) and Law Clerk/Patent Agent with Clinical Science Background (D. Eisner) | 87.2 | $280 | $24,416.00 |
| Paid Law Clerks | 9.6 | $245 | $2,352.00 |
| Paralegals | 14.9 | $215 | $3,203.50 |
| | | **Subtotal:** | **$194,144.00** |
| **Post-Application Hours (Est.)[3]** | 150 | $465.74 | $ 69,861.00 |
| | | **TOTAL:** | **$264,005.00** |

---

[3] Class Counsel performed and will perform additional work not included in the above lodestar, sans "post-application hours." For example, due to the need to tabulate fees and costs, two days of drafting, editing and briefing this Motion and the Motion for Final Approval and supporting declarations is not included in the actual hours spent. Moreover, after this application is filed, Counsel will have other duties, minimally including attending the Final Approval Hearing and coordinating with Defendants and the Class Administrator on final claims processing (for example, creating a set of procedures and rules to audit and de-duplicate the claims). Class Counsel may also be required to respond to objections, which could substantially increase the additional time spent. To account for the known additional work and the possibility of more if there are objections or an appeal, Class Counsel estimated 150 "post-application hours." Class Counsel valued these additional hours at a blended rate of $465.74 per hour, representing the approximate average billing rate of all attorney timekeepers.

## APPENDIX 2: CLASS COUNSEL'S EXPENSES

### Expenses Recoverable Under Cal. Civ. Proc. Code § 1033.5

| Description | Amount |
|---|---|
| Filing Fee | $350.00 |
| Certified mail postage to all defendants and their agents for statutory notice required by CLRA | $7.58 |
| **Total:** | **$357.58** |

### Additional Expenses Reasonably Necessary to Prosecute Action

| Description | Amount |
|---|---|
| Mediation (two days) | $7,495.00 |
| Pacer | $12.10 |
| Flat rate charge for case deadline calculations (CompuLaw Deadlines on Demand software) | $275.28 |
| Parking and mileage | $95.44 |
| Photocopying | $777.75 |
| Meal (for two persons during all day document review, out of five days total of document review) | $8.05 |
| **Total:** | **$8,663.62** |

### GRAND TOTAL:   $9,021.20