1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12  MELISSA NIGH,
13  *on behalf of herself, all others*
    *similarly situated, and the general*
14  *public*

                                    Plaintiff,
15        vs.

16

17

18  HUMPHREYS PHARMACAL, INC.,
    *et al.*
19
                                    Defendants.
20

21

|  |
|---|

CASE NO. 12cv2714-MMA-DHB

**ORDER AFFIRMING TENTATIVE RULING AND GRANTING:**

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

[Doc. No. 18]

**MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD**

[Doc. No. 21]

22        Currently before the Court are Plaintiff's motions for final approval of the

23  class action settlement and for attorneys' fees, costs, and a class representative

24  incentive award.  The Court held a final approval hearing on October 21, 2013

25  pursuant to Fed. R. Civ. P. 23(e)(2).  For the reasons stated below, the Court

26  **GRANTS** the motion for final approval of the settlement and **GRANTS** the motion

27  for attorneys' fees, costs, and a class representative incentive award.

28  *//*

1

**BACKGROUND**

2

***A.    Factual Background***

3      The individually named plaintiff in this action is Melissa Nigh, a resident of

4  Morgan Hill, California.

5      Defendant Humphreys Pharmacal, Inc. ("Humphreys") manufactures and

6  distributes the homeopathic drugs at issue ("the Products").  Humphreys is a

7  Delaware corporation with its corporate headquarters, principal place of business,

8  and residence in Connecticut.

9      Defendant Dickinson Brands, Inc. ("Dickinson") distributes and sells the

10  Products.  Dickinson is a Delaware Corporation with its principal place of business

11  in Connecticut.

12      Defendants manufacture, distribute, and market the Products as being

13  effective in relieving ailments and symptoms with respect to three general categories

14  of complaints: children's remedies (primarily teething remedies), cold and flu

15  remedies, and pain relief remedies.

16      Plaintiff brings this action against Defendants for damages and injunctive

17  relief based on Defendants' false and deceptive advertising in connection with its

18  Products.  Plaintiff alleges that she purchased a Product, Humphreys' Teething

19  Tablets, during the Class Period.  In doing so, Plaintiff relied on Defendants' various

20  representations including: the Product's name itself, the inference that the Product

21  would relieve symptoms associated with its name, the representation that the Product

22  was "100% All Natural," and the representation that the Product was "Fast Acting."

23  Plaintiff asserts, however, that the Product did not work for Plaintiff as advertised.

24  Moreover, Plaintiff alleges that because there are no or trace amounts of active

25  ingredients present in all of the Products, the Products are nothing more than a

26  placebo.  Plaintiff therefore contends that Defendants engaged in false advertising

27  and deceptive business practices in connection with the Products.

28  //

1    **B.    *Procedural History***

2    On June 19, 2012, Plaintiff sent a letter to Defendants, pursuant to the

3    California Consumers Legal Remedies Act, alleging that Defendants had engaged in

4    false advertising and other unfair and deceptive business practices in connection

5    with the marketing and sale of the Products and demanding relief on a class-wide

6    basis.

7    Beginning August 28, 2012, the parties, represented by their respective

8    counsel, attended three consecutive days of formal mediation before the Honorable

9    Leo Papas (Ret.) of Judicate West.

10   On November 7, 2012, Plaintiff filed a putative class action Complaint,

11   alleging claims for violations of the California Consumers Legal Remedies Act

12   ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; violations of the Unfair Competition

13   Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; violations of the California

14   False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; breach of express

15   warranty; breach of implied warranty of merchantability; violations of the

16   Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; and unjust enrichment.

17   On December 11, 2012, the parties filed a joint notice of settlement.  [Doc.

18   No. 7.]  On January 10, 2013, the parties jointly moved for an order certifying a

19   settlement class, preliminarily approving the class settlement, appointing a class

20   representative and lead class counsel, approving the notice plan, and setting a final

21   approval hearing.  [Doc. No. 9.]

22   On January 23, 2013, the Court granted the motion for settlement class

23   certification and preliminary approval.  [Doc. No. 11.][1]  The parties then commenced

24   providing notice to the class and proceeded with the claims administration process.

25   [*See* Sherwood Decl. ¶¶ 2–15.]

26   The matter is now before the Court on Plaintiff's motions for final approval of

27

28   [1]The Court issued an amended order granting preliminary approval of the class
settlement.  [Doc. No. 13.]

the class settlement and for an award of attorneys' fees and costs, and a class

representative incentive award.  [Doc. Nos. 18, 21.]

*C.*   *The Settlement*

    **1.**   **The Settlement Class**

The Settlement class consists of: All persons in the United States who

purchased the Products (as defined in Exhibit D of the Agreement)[2] for personal or

household use from June 20, 2008 to June 19, 2013 ("the Class Period").  Excluded

from the Class are Defendants; and persons who during or after the Settlement

Period were officers or directors of Defendants, or any corporation, trust or other

entity in which any Defendant has a controlling interest; and the members of the

immediate families of Defendants' employees or their successors, heirs, assigns and

legal representatives; any judicial officer hearing this Action, and their family

members and employees.

    **2.**   **Settlement Terms**

The Settlement provides both injunctive relief and payment to Class

Members.

       *a.*   *Injunctive Relief*

First, Defendants will place a new "FDA disclaimer" on each Product, located

next to the Product's drug facts label.  This FDA disclaimer states: "These 'uses'

have not been evaluated by the Food and Drug Administration."  Defendants will

also incorporate this FDA disclaimer throughout its advertising wherever a drug

facts label appears.

Second, Defendants will include the following language in close proximity to

---

[2] Exhibit D of the Settlement Agreement lists the following Products:  Arthritis Relief - #15, Bedwetting Pellets - #30, Cold Relief - #77, Cough Control - #7, Insomnia Relief - #40, Simple Diarrhea - #4, Simple Fever - #1, Simple Nervous Conditions - #28, Simple Throat Conditions - #34, Symptoms of Delayed Menses - #11, Original Teething Pellets - #3, Original Teething Pellets Belladonna Free - #3, Very Berry Teething Pellets - #3, Very Cherry Colic Pellets - #36, Very Cherry Teething Pellets - #3, Very Cherry Teething Pellets Belladonna Free - #3, Very Cherry Teething Strips - #3, Very Cherry Teething Strips Belladonna Free - #3, Any other existing Humphreys product labeled "Homeopathic."  [Doc. No. 9-1, Settlement Agreement, Exh. D.]

the drug facts label on the Product's package: "X is a homeopathic dilution: see http://www.humphreysbaby.com/homeopathic-dilution for details."  Defendants will include this dilution disclaimer throughout its advertising wherever a readable version of a Product's drug facts label appears.  Additionally, Humphreys' Homeopathic Dilution website will fully explain what the "X" level of dilution means, in a question and answer format, and in language that an average member of the public can understand.  Further, all of Humphreys' websites, including the Homeopathic Dilution website, will contain a link to the FDA website for its Compliance Policy Guide § 400.400 document, and Defendants will take reasonable steps to ensure that the links remain working in the future.

Third, Defendants will no longer label any homeopathic product as "All Natural," "Natural," or use similar language if the product contains artificial or synthetic ingredients.

Fourth, Defendants will no longer label any homeopathic product containing derivatives of animals or insects as "No Animal Ingredients."

### b.     Payment to Class Members

Class Members who purchased any of the Products will receive a full refund up to $10.00 for each Product purchased.  Class Members without a proof of purchase are subject to a cap of $50.00 per household.  Class Members who submit a proof of purchase are subject to a cap of $100.00 per household.

As part of the Settlement, Defendants will pay a sum total of $1,400,000 to a non-reversionary fund ("Settlement Fund").  From this Settlement Fund, the Claim Administrator will pay (1) valid claims submitted by Class Members, (2) Class Counsel's attorneys' fees and expenses, (3) a class representative incentive award, (4) costs of notice and claims administration, and (5) applicable taxes.  Any funds remaining in the Settlement Fund after the above payments will be distributed as follows: 50% to a Court-approved non-profit organization dedicated to informing consumers of drug labeling concerns, such as Consumers Union, or a non-profit

organization that provides legal services on behalf of the indigent; and 50% to claimants as a supplemental distribution.

During the Class Period, Class Members have filed 2,424 claims[3] for a total value of $79,475.91.  [Sherwood Decl. ¶¶ 16–17.]  The Claims Administrator has received one request to opt-out of the Class.  [*Id*. ¶¶ 17–18.]

The Claims Administrator has incurred costs of $238,756.36 and estimates that the total administration costs necessary to complete administration of the Settlement will not exceed $250,000.  [*Id.* ¶ 19.]

Class Counsel seeks $420,000, or 30% of the common fund, in attorneys' fees plus $9,070.07 in reimbursement costs.  Defendants have agreed not to challenge any request for attorneys' fees that does not exceed 30% of the common fund.  The parties have agreed that any attorneys' fees and costs shall be paid from the Settlement, meaning that the Settlement Fund will be reduced by the fee award.

The sole class representative, Melissa Nigh, will receive an incentive award of $3,500.

Finally, to receive payment under the Settlement, Class Members claimants must expressly waive and relinquish any claims, including those rights available under California Civil Code section 1542.

**DISCUSSION**

**A.    *Motion for Final Approval of Class Settlement***

    **1.    Class Certification**

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a).  Here, the Court previously preliminarily certified the following class:

> All persons in the United States who purchased the Products (as defined in Exhibit D of the Agreement) for personal or household use from June 20, 2008 to June 19, 2013 ("the Class Period").  Excluded from the Class are Defendants; and persons who during or after the Settlement Period

---

[3] The Claims Administrator received 2,763 claims in total but identified 339 as duplicates, resulting in 2,424 unique claims.  [Sherwood Decl. ¶¶ 16–17.]

1    were officers or directors of Defendants, or any corporation, trust or other
2    entity in which any Defendant has a controlling interest; and the members
     of the immediate families of Defendants' employees or their successors,
3    heirs, assigns and legal representatives; any judicial officer hearing this
     Action, and their family members and employees.

4    At that time, the Court concluded that the proposed Class satisfied the numerosity,

5    commonality, typicality, and adequacy of representation requirements of Rule 23(a).

6    [*See* Doc. No. 13 ¶ 2.]  The Court also found that the proposed classes satisfied the

7    predominance and superiority requirements of Rule 23(b)(3).  [*Id.*]

8                    **a.    Rule 23(a) requirements**

9         No one has objected that the settlement Class fails to satisfy the numerosity

10   requirement.  Accordingly, the Court does not revisit that requirement and addresses

11   the additional requirements below.

12        Objector Aaron Petrus, proceeding *pro se*, makes blanket, unsubstantiated

13   objections to the commonality, typicality, and adequacy of class counsel

14   requirements under Rule 23(a).  The Court **OVERRULES** these objections.

15                        **i.    Commonality**

16        To satisfy the commonality requirement, the plaintiff mush show the existence

17   of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts

18   construe this requirement permissively, so that "[t]he existence of shared legal issues

19   with divergent factual predicates is sufficient, as is a common core of salient facts

20   coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*,

21   150 F.3d 1011, 1019 (9th Cir. 1998).  The Court previously found that the Class

22   satisfied commonality because each Class Member's claim turns on a common

23   issue—whether Defendants' representations on the packaging, labeling, and

24   marketing of its Products were misleading.  The Court affirms its previous finding.

25                        **ii.    Typicality**

26        Typicality requires that "the claims or defenses of the representative parties

27   are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under

28   the rule's permissive standards, representative claims are 'typical' if they are

reasonably co-extensive with those of absent Class Members; they need not be substantially identical." *Id.*  The Court previously found that Melissa Nigh was an adequate representative of the Class.  Plaintiff Nigh claims that she purchased Defendants' Product after relying on the Product's representations, but the Product did not work as advertised.  The Court again finds that Plaintiff's claim is typical, if not identical, to the claims of other Class Members.  Accordingly, the Court affirms its previous finding that Plaintiff satisfies the typicality requirement under Rule 23(a)(3).

### iii.   Adequacy of Representation

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P 23(a)(4).  According to the Ninth Circuit, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  The Court previously appointed the Law Offices of Ronald A. Marron as Class Counsel.  The Court finds no indication that any conflict of interest exists between Plaintiff Nigh or Class Counsel and other Class Members.  Moreover, both Plaintiff and Class Counsel have litigated the action vigorously on behalf of the Class.  As explained below, Class Counsel has extensive experience in consumer litigation, specifically in false and deceptive advertising in connection with homeopathic drugs.  Further, the Court finds that both Plaintiff and Class Counsel have fairly and adequately represented the Class throughout this litigation.  Accordingly, the Court affirms its previous finding that Plaintiff and Class Counsel adequately represent the Class.

Plaintiff has satisfied the requirements for class certification under Rule 23(a).

### b.   Rule 23(b)(3) requirements

After a plaintiff satisfies commonality under Rule 23(a), the plaintiff must

1  also establish common issues predominant over individual issues under Rule

2  23(b)(3).  *See Hanlon*, 150 F.3d at 1021 (noting "Rule 23(b)(3) focuses on the

3  relationship between the common and individual issues").

4       The Court affirms its previous findings under Rule 23(b)(3).[4]  Here, the

5  questions of law and fact as to whether Defendants' representations on its Products'

6  packaging and labels are false or misleading to a reasonable consumer predominate

7  over individual questions.  Moreover, Defendants make uniform representations on

8  the labeling and do not differentiate for any specific market or region.  [Doc. No. 9-

9  3, Kubow Decl. ¶ 7.]  Further, Class Members share a common injury – loss of the

10  purchase price.  Finally, resolution on a class-wide basis provides a superior forum

11  based on considerations of judicial economy, and the fact that absent this forum,

12  Class Members are unlikely to bring individual suits to recover the loss of the

13  purchase price.  *See Hanlon*, 150 F.3d at 1022 ("When common questions present a

14  significant aspect of the case and they can be resolved for all members of the class in

15  a single adjudication, there is clear justification for handling the dispute on a

16  representative rather than on an individual basis.") (internal citation omitted).

17  Accordingly, the Court affirms its finding that the Class satisfies both the

18  predominance and superiority requirements under Rule 23(b)(3).

19       The Court affirms its previous findings and certifies the settlement Class.

20       **2.  The Settlement**

21            **a.  Legal Standard**

22       Courts require a higher standard of fairness when settlement takes place prior

23  to class certification to ensure class counsel and defendants have not colluded in

24  settling the case.  *Hanlon*, 150 F.3d at 1026.  Ultimately,

25       [t]he court's intrusion upon what is otherwise a private consensual
        agreement negotiated between the parties to a lawsuit must be limited to
26       the extent necessary to reach a reasoned judgment that the agreement is
        not the product of fraud or overreaching by, or collusion between, the

27

28       _____

       [4] Mr. Petrus also objects to the predominance and superiority requirements under
       Rule 23(b)(3).  The Court overrules these objections.

1    negotiating parties, and that the settlement, taken as a whole, is fair,
2    reasonable and adequate to all concerned.

3    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

4        A court considers several factors in determining whether a proposed

5    settlement is "fair, adequate and reasonable" under Rule 23(e).  Such factors may

6    include: (1) the strength of the case; (2) the risk, expense, complexity and likely

7    duration of further litigation and the risk of maintaining class action status

8    throughout the trial; (3) the stage of the proceedings (investigation, discovery and

9    research completed); (4) the settlement amount; (5) whether the class has been fairly

10   and adequately represented during settlement negotiations; and (6) the reaction of

11   the class to the proposed settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

12   Cir. 2003).  The Court need only consider some of these factors – namely, those

13   designed to protect absentees.  *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir.

14   2003) (overruled in part on other grounds).

15       Judicial policy favors settlement in class actions and other complex litigation

16   where substantial resources can be conserved by avoiding the time, cost, and rigors

17   of formal litigation.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.

18   1379, 1387 (D. Ariz. 1989).

19              **b.    Analysis**

20                    **i.    *The strength of the case, and risk, expense, complexity***
21                          ***and likely duration of further litigation***

22       To determine whether the proposed settlement is fair, reasonable, and

23   adequate, the Court must balance against the continuing risks of litigation (including

24   the strengths and weaknesses of the Plaintiff's case), the benefits afforded to

25   members of the Class, and the immediacy and certainty of a substantial recovery.

26   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In other

27   words,

28          [t]he Court shall consider the vagaries of litigation and compare the
             significance of immediate recovery by way of the compromise to the

                                    - 10 -                        12cv2714-MMA-DHB

mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

As to the strength of the case, Plaintiff asserts that she had a strong case that Defendants' advertising was false or deceptive to consumers.  Plaintiff maintains that the average consumer is unaware of both the high level of dilution in the Products and that the FDA neither approves nor reviews homeopathic drug labels.  Although Plaintiff believes that she has a realistic chance of success, she acknowledges that she "faces obstacles to an ultimate recovery."  Specifically, Plaintiff recognizes difficulty in establishing standing to assert claims for injunctive relief and proving Defendants' liability (the Products do not work), which most likely would require competing expert testimony.  Further, Defendants would seek dismissal based on either preemption or the doctrine of primary jurisdiction, contending that because the FDA has authority to regulate the field of homeopathy labeling, the Court should defer to the FDA's expertise.

As for the complexity of the case, Plaintiff acknowledges that her "claims involve difficult regulatory issues under the Sherman Law, FDCA, and OTC drug marketing standards, plus consumer perceptions and the claimed efficacy of the Products.  The costs and risks associated with continuing to litigate would require extensive resources and Court time, such as expert testimony and *Daubert* motions." [Doc. No. 18 at 19.]  Defendants would also move for the Court to reject application of California law to a nationwide class.  Accordingly, absent settlement, this case would present complex issues during each step of a long litigation process.  The Court finds that these factors favor approval.

### ii.    *The Risk of Maintaining Class Action Status Throughout the Trial*

Pursuant to Rule 23, the Court may revisit a prior order granting certification

of a class at any time before final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement.  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

Here, the parties reached a settlement prior to a motion for class certification. Although Defendants have stipulated to the class certification for settlement purposes, they have made it clear that absent settlement, they would "vigorously contest class certification."  Based on Defendants' representations to the Court, there is a risk that the Class may not be certified.  Accordingly, this factor weighs in favor of settlement.

### iii.    *The stage of the proceedings (investigation, discovery and research completed)*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *DIRECTV, Inc.*, 221 F.R.D. at 528.  In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).

Here, before Plaintiff filed the Complaint, the parties participated in three days of formal mediation before the Honorable Leo Papas (Ret.).  Prior to this mediation, the parties had no communication regarding the possible settlement terms.  [Doc. No. 19 at 10.]  Although this mediation did not result in a settlement, the parties continued to negotiate but only through Judge Papas.  It appears the Settlement Agreement resulted from arms-length negotiations and was not the result of collusion.

Additionally, Plaintiff states that it "conducted substantial discovery,

1   including reviewing approximately 50,000 of Defendants' internal documents,

2   including original invoices for all years of the Class Period, marketing data,

3   advertising information, and third party financial reports." [Doc. No. 18 at 16.]

4   Plaintiff's counsel also reviewed FDA guidance documents, applicable law, and

5   background evidence in relation to the Products' claims.  Finally, Defendants claim

6   that they "were fully and thoroughly informed by their respective legal counsel

7   about the strengths and weaknesses of their claims as well as the risks and costs

8   entailed in litigating this action through trial and post-trial proceedings." [Doc. No.

9   19 at 23.]  Accordingly, the parties were sufficiently informed and prepared for

10  settlement discussions.

11                    *iv.    The Settlement Amount*

12          Defendants have established a $1.4 million non-reversionary Settlement Fund,

13  which amounts to approximately 16% of Defendants' sales to wholesalers and

14  distributors during the Class Period.[5]  [Doc. No. 19 at 19; Doc. No. 9-3, Kubow

15  Decl. ¶ 6.]  Class Members are eligible for reimbursement up to $10 per Product,

16  subject to a household limit of either $50 without proof of purchase or $100 with

17  proof of purchase.  Further, this $10 per Product limit exceeds the highest known

18  sale price of any of the Products.  [Doc. No. 19 at 19.]   Finally, each Class Member

19  is likely to recover an additional supplemental distribution from the Settlement

20  Fund's post-claim balance.  [Sherwood Decl. ¶ 20.]

21          Additionally, the Settlement provides for injunctive relief.  The resulting

22  dilution and FDA disclaimers that Defendants will incorporate on the Products'

23  labeling and advertising is valuable to the Class as well as consumers generally,

24  especially considering that absent settlement, Defendant would oppose Plaintiff's

25  standing for injunctive relief.

26          Considering the Settlement terms—both monetary and injunctive relief—as a

27

28          [5]   Humphreys' sales of homeopathic products generated approximately
$8,697,291 in revenues from July 1, 2008 to June 30, 2012.  [Kubow Decl. ¶ 6.]

whole, the Settlement amount is fair and reasonable.  *See DIRECTV, Inc.*, 221 F.R.D. at 527 ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.") (quoting *Officers for Justice*, 688 F.2d at 628).

### v.   Whether the Class has been fairly and adequately represented during settlement negotiations

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528; *Adoma*, 913 F. Supp. 2d at 977.

Class Counsel asserts that he is familiar with the specific facts and issues arising in this case and also has considerable expertise in consumer and class action litigation.  Further, he avers that the primary focus of his practice is consumer fraud, specifically false and misleading labeling of food, nutrition, and over-the-counter drugs.  [Marron Fee Decl. ¶ 4.]  Defendants also acknowledge that Class Counsel has significant experience with homeopathic products litigation in particular.  The Court finds that the Class was adequately represented by competent counsel.  This factor supports approval of the settlement.

### vi.   The reaction of the Class to the proposed settlement

The Ninth Circuit has held that courts should consider the number of Class Members who object to a proposed settlement.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that

84% of the class has filed no opposition).

Here, only one Class Member opted out of the Class by the opt-out deadline of June 19, 2013.  [Sherwood Decl. ¶ 17, Exh. F.]  Class members submitted a total of 2,424 unique claims, representing in excess of 11,600 purchases of the Products for a total dollar amount of $79,475.91.  [Sherwood Decl. ¶¶ 16–18.]  The Court received only one objection to the Settlement and attorneys' fees request.  Thus, with only one objection, the overall reaction to the Settlement appears to be positive.

Mr. Petrus objected to the Settlement on various grounds.  First, Mr. Petrus objects to the "*cy pres* component of 50% to a Court-approved non-profit organization," contending "class members are entitled to a settlement providing them with something of value."  [Doc. No 23 at 2.]  Here, under the Settlement terms, class members will recover monetary damages of up to $10 per Product purchased, subject to either a $50 or $100 cap per household depending on whether the claimant has proof of purchase.  Only *after* this and other payments will the Claim Administrator distribute remaining funds, if any, to the *cy pres* fund. Therefore, Class Members do in fact receive something of value under the Settlement.

As to the *cy pres* distribution, Mr. Petrus contends there is no nexus between the proposed *cy pres* recipient and the harm that occurred.  The Ninth Circuit has stated that any "*cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal citation and quotations omitted).[6]  In *Dennis*, the Ninth Circuit acknowledged that "[t]he UCL is designed to preserve fair competition among business competitors and protect the public from nefarious and unscrupulous

---

[6] The Court notes that in *Lane v. Facebook, Inc.*, the Ninth Circuit acknowledged a lower standard for *cy pres* recipients under the substantial nexus test. 696 F.3d 811, 821 (9th Cir. 2012).  The Court, however, finds that the *cy pres* recipient in this case meets the more stringent standard set forth in *Dennis v. Kellogg*, 697 F.3d 858, 865 (9th Cir. 2012).

business practices, and the purpose of the CLRA is similarly to protect consumers against unfair and deceptive business practices."  *Id.* at 866 (internal citations and quotations omitted).

Here, Plaintiff has brought this action for false and deceptive business practices under both the UCL and CLRA.  Pursuant to the Settlement Agreement, the Claims Administrator will distribute 50% of any remaining Settlement Funds to Consumers Union.  According to its website, "Consumers Union (CU) is an expert, independent, nonprofit organization whose mission is to work for a fair, just and safe marketplace for all consumers and to empower consumers to protect themselves."[7] The Court finds that this *cy pres* distribution to Consumers Union reflects the objectives of the UCL and CLRA; reflects the interests of silent Class Members; and benefits the Plaintiff Class, who are consumers that purchased Products based on false and misleading representations.  Accordingly, the Court **APPROVES** Consumers Union as the *cy pres* recipient.

Next, Mr. Petrus objects to the required release of claims and the waiver of rights under California Civil Code section 1542.  Other courts within this district have already found this waiver is not overbroad.  *See, e.g.*, *Gallucci v. Boiron, Inc.*, No. 11cv2039 JAH, 2012 WL 5359485, at *11 (S.D. Cal. Oct. 31, 2012) (finding "[a] majority of circuits, including the Ninth Circuit, uphold the release of claims that are based on the same factual predicate as the claims asserted in the complaint.") (internal citation omitted).  Moreover, the release only applies to claims that could have been made during the Class Period.  *See, e.g.*, *Cox v. Clarus Mktg. Grp.*, *LLC*, No. 11-CV-2711, — F.R.D. —, 2013 WL 1797028, at *4 (S.D. Cal. Apr. 29, 2013) (approving a class action settlement that required class members, other than those who opt-out, to "release all claims against Defendants that are based on facts, omissions or other conduct that have been or could have been alleged in this action").

---

[7] Consumersunion.org

Mr. Petrus also objects to paying any administration costs from the Settlement Fund.  Claim administration is necessary for the distribution of the settlement fund and therefore directly benefits the Class.  Further, payment of administration costs from the Settlement Fund does not harm the Class.  To the contrary, even after paying the Claim Administrator from the Settlement Fund, each Class Member claimant will still receive reimbursement of the purchase price, subject to the respective caps, as well as a supplemental distribution.

### 3.    Conclusion

Accordingly, the Court **OVERRULES** the objections to approval of the final Settlement and **GRANTS** the motion, finding that the Settlement is "fair, adequate and reasonable" under Rule 23(e).

### B.    *Motion for Award of Attorneys' Fees and Costs*

Plaintiff seeks an award of attorneys' fees and costs in the amount of $420,000, or 30% of the common fund, in attorneys' fees and $9,070.07[8] in costs.

### 1.    Relevant Law

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys fees and nontaxable costs that are authorized by law or by the parties' agreement."  Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys fees using either the lodestar method or the percentage-of-the-fund method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002);  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  The choice of which method to apply depends upon the circumstances of the case.  *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996).  Regardless of which method the Court uses—the percentage approach or the lodestar method—the Court must ultimately determine whether the end result is reasonable.  *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)

---

[8] At the final approval hearing, Class Counsel indicated that they have incurred costs to date in the amount of $9,070.07, up from $9,021.20 as August 1, 2013.

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method.  *Vizcaino*, 290 F.3d at 1047.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  "Courts cannot rationally apply any percentage in the abstract, without reference to all the circumstances of the case before it."  *In re Brooktree Sec. Litig.*, 915 F. Supp. at 196 (internal citation omitted).

"As always, when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances."  *Id.*  The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048–50.

"In the absence of a better system, the district court has a duty to the individual class members to ensure the requested fee award is reasonable under the circumstances."  *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997) (citing *In re Washington Publ. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)).

**2.    Analysis**

The Court finds that the percentage method is appropriate in this case and therefore must determine what percentage is a reasonable award.  *See In re Bluetooth*, 654 F.3d at 942.

Class Counsel seeks an award of 30% of the common fund, or $420,000. [Doc. No. 21 at 4.]  Defendants have agreed that they would not challenge a request

1   for fees and costs that does not exceed 30%.  [Doc. No. 26.]   The Court received

2   one objection in which Mr. Petrus objects to both payment of the attorneys' fees

3   from the Settlement Fund and to the amount of 30%, arguing that any award in

4   excess of the Ninth Circuit's 25% benchmark is "highly prohibitive."[9]

5          As an initial matter, Plaintiff may properly seek payment of attorneys' fees

6   from the Settlement Fund.  As the Ninth Circuit has explained, "[u]nder regular

7   common fund procedure, the parties settle for the total amount of the common fund

8   and shift the fund to the court's supervision.  The plaintiffs' lawyers then apply to

9   the court for a fee award from the fund."  *See Staton*, 327 F.3d at 969.  This

10   procedure is precisely what the parties here have done.  Accordingly, the Court

11   overrules Mr. Petrus' objection regarding payment of attorneys' fees from the

12   Settlement Fund.

13          To support its request for 30%, Plaintiff asks that the Court consider the costs

14   of implementing injunctive relief, which increases the Settlement value by $310,000

15   to total of $1,710,000.  When considering the costs of injunctive relief, Plaintiff

16   claims that the requested fee is only 24.5% of the total recovery.  [Doc. No. 21 at 1.]

17   However, the Ninth Circuit has cautioned district courts against assigning a

18   monetary value to injunctive relief for the purpose of determining an award of

19   attorneys' fees.  *See Staton*, 327 F.3d at 974 ("We hold, therefore, that only in the

20   unusual instance where the value to individual class members of benefits deriving

21   from injunctive relief can be accurately ascertained may courts include such relief as

22   part of the value of a common fund for purposes of applying the percentage method

23   of determining fees.").  Accordingly, although the Court considers the injunctive

24   relief in light of the results obtained as a whole, it declines to assign a dollar amount

25   _____

26   [9]   To the extent Mr. Petrus objects to the Notice regarding attorneys' fees, the
      objection is overruled.  The Notice to Class Settlement states: "Class Counsel will apply

27   to the Court for an award of attorneys' fees of up to thirty percent (30%) of the total
      value of the settlement to the class, plus actual expenses (including their court costs),
      subject to Court approval."  The Class received sufficient notice regarding the amount

28   of attorneys' fees that Class Counsel would seek.

to the injunctive relief.

Plaintiff also contends that 30% of the common fund is warranted under the circumstances.  Specifically, Plaintiff contends that cases where the settlement amount is under $10 million often result in fees above 25%.  [Doc. No. 21 at 15.] Plaintiff also highlights the exceptional results obtained, particularly the injunctive relief, as well as the complexity of issues regarding requirements of over-the-counter homeopathic drug manufacturers.

The results achieved in this case were highly favorable to Class Members. Class Members will recover monetary damages for purchasing the product as well as a supplemental distribution.  Further, the Settlement includes various types of injunctive relief, including both dilution and FDA disclaimers.  As explained above, the injunctive relief is a substantial benefit to the Class and the general public. Additionally, had the case proceeded further in the litigation process, the risks of litigation and recovery by the Class were real and substantial.  The case presented various complex legal issues on both sides regarding proof of liability, primary jurisdiction, and class certification.

However, both the risk in bringing this case as well as the duration of the case do not support an upward adjustment from the 25% benchmark.  Prior to filing the Complaint, the parties initiated arms-length negotiations, and these negotiations largely reflected the parties' final Settlement Agreement.  [*See* Doc. No. 19 at 7.] The parties reached a settlement within a month of Plaintiff's filing the Complaint and within 6 months of Plaintiff's sending its initial demand letter to Defendants. Although Class Counsel took this case on a contingent fee basis, settlement seemed like a realistic possibility at the time Plaintiff filed this action.  Accordingly, the likelihood of settlement mitigates some of the risk in bringing the action.  *See, e.g.*, *In re Quantum Health*, 962 F. Supp. at 1257–58 ("For a contingent fee to be appropriate, therefore, there must be a realistic risk of nonrecovery.  The Ninth Circuit's 25% benchmark assumes a genuine degree of risk.").

Further, while some courts have awarded 30% and higher in class action cases,[10] other courts have declined to award an upward adjustment or even the 25% benchmark. *See, e.g.*, *In re Brooktree Sec. Litig.*, 915 F. Supp. at 199 (applying a downward departure from 25% to 15% after concluding the case was an unusually simple one); *In re Quantum Health*, 962 F. Supp. at 1259 (finding a fee award of 10% of the common fund was appropriate after assessing the actual risk involved, the nature and facts of the case, and comparable recoveries in other cases). Further, this case is similar to *Gallucci*, a case involving the same Class Counsel. *See Gallucci*, 2012 WL 5359485 at *9. There, the court declined the requested 30% but instead awarded the 25% benchmark where the parties engaged in extensive mediation and settled within three months of filing the complaint. *Id.*

Here, the Court finds the 25% benchmark is reasonable, resulting in a fee award of $350,000 for Class Counsel.[11] The Court finds that when considering the favorable results obtained – both in terms of monetary and injunctive relief – as well as complexity and risks of litigation, Class Counsel's skill and quality of work, the

---

[10] Plaintiff listed a slew of cases where courts awarded 30% or more of the common fund. Although the Court has considered these cases, it finds that the circumstances here are distinguishable. For example, in *McPhail v. First Command Fin. Planning, Inc.*, the court awarded 30% for the first $10 million, noting that class counsel had devoted four years to the case. 2009 U.S. Dist. LEXIS 26544 , at *20. *In re Activision Sec. Litig.*, the court awarded 32.8% of the common fund where settlement occurred after "three years of litigation, substantial discovery and motion practice, and on the eve of trial." 723 F. Supp. 1373, 1379 (N.D. Cal. 1989). Here, however, settlement was a realistic possibility at the time Plaintiff filed the Complaint. Moreover, this case did not require extensive motion practice. Finally, Plaintiff's reliance on this Court's Order in *Jack v. Hartford Fire Ins. Co.*, 2011 U.S. Dist. LEXIS 118764 (S.D. Cal. Oct. 13, 2011) for supporting an upward adjustment is misplaced. There, the Court found the circumstances of the cases did not warrant an upward adjustment and awarded the 25% benchmark. *Id.* at *14–15 (" Upon due consideration, the Court concludes that this case does not warrant an upward adjustment above the twenty-five percent benchmark. There is no evidence to support Class Counsel's claims that the results in this case were exceptional or that this case is extraordinarily factually or legally complex.").

[11] Plaintiff's most recent filings indicate that total, they have incurred $292,401 in fees as of October 10, 2013. When cross-checking against the lodestar method, this would result in a lodestar multiplier of 1.2. This multiplier is within the Ninth Circuit's generally approved range between 1.0 and 4.0 in common fund cases. *See Vizcaino*, 290 F.3d at 1051 n.6 (internal quotation and citation omitted).

contingent nature of the fees, and awards in similar cases, an award of 25% of the common fund is appropriate.

Finally, Class Counsel seeks reimbursement of their out-of-pocket expenses in this litigation, in the amount of $9,070.07.  Class Counsel is entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)); *Staton*, 327 F.3d at 974.  The Court finds that Class Counsel reasonably incurred the out-of-pocket costs in connection with the prosecution of this litigation and that these costs were advanced by Class Counsel for the benefit of the Class.  Accordingly, the Court awards Class Counsel a reimbursement of its costs.

### 3.    Conclusion

The Court finds that an attorneys' fee award of 25% of the common fund is reasonable and therefore **APPROVES** the award of attorneys' fees in the amount of $350,000, as well as Class Counsel's request for litigation costs and expenses, in the amount of $9,070.07.

## C.    *Motion for Class Representative Incentive Award*

"Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977.)  Additionally, courts should ensure that an incentive award is not based on fraud or collusion.  *Id.*

The only class representative in this case is Plaintiff Melissa Nigh.  No Class Member has objected to Plaintiff's intent to seek an award of $3,500.  Further, Ms. Nigh has been actively involved with the case since its inception, including reviewing court filings, communicating with Class Counsel, and reviewing and approving the Settlement.  [Nigh Decl. ¶¶ 2–4; Doc. No. 21 at 24.]  Finally, this award does not appear to be the result of fraud or collusion.  Accordingly, the Court

1    **APPROVES** the $3,500 service award as reasonable.

2                                    <u>CONCLUSION</u>

3          The Court **GRANTS** Plaintiff's motion and finds the proposed Settlement of

4    this class action appropriate for final approval pursuant to Federal Rule of Civil

5    Procedure 23(e).  The Court further finds that the proposed Settlement appears to be

6    the product of serious and informed, arms-length negotiations; that the resulting

7    Settlement is fair, reasonable, and adequate; and that Plaintiff has satisfied the

8    standards for final approval of a class action Settlement under federal law.

9          Furthermore, the Court **GRANTS** Plaintiff's motion for an award of

10   attorneys' fees in the amount of 25% of the common fund and the requested costs.

11   Finally, the Court finds the class representative service payment of $3,500 is

12   reasonable.

13                         <u>JUDGEMENT AND ORDER OF DISMISSAL</u>

14         This Court **APPROVES** the Settlement and **ORDERS** the parties to implement

15   the Settlement Agreement according to its terms and conditions.

16         The capitalized terms used in this Final Order shall have the meanings and/or

17   definitions given to them in the Settlement Agreement or, if not defined therein, the

18   meanings and/or definitions given to them in this Order.

19         This Final Order incorporates the Settlement Agreement and its

20   accompanying exhibits.  [Doc. No. 9-1, Exh. 1.]

21         The Release set forth in the Settlement Agreement is expressly incorporated

22   herein in all respects, is effective of the date of the entry of this Final Order, and

23   forever discharges the Released Parties from any claims or liabilities released by the

24   Settlement, including the Released Claims, and including without limitation a waiver

25   of all rights under Section 1542 of the California Civil Code.  This release covers,

26   without limitation, any and all claims for attorneys' fees and expenses, costs, or

27   disbursements incurred by Class Counsel, the Settlement of this Action, the

28   administration of such Settlement, and the Released Claims, except to the extent

1   otherwise specified in this Order and the Settlement Agreement.

2       If the Settlement fails to become effective in accordance with the terms of the

3   Settlement Agreement, any Judgment or order by the Court in accordance with the

4   terms of this Agreement will be treated as vacated.

5       This action, including all individual and Class claims resolved in it, is

6   **DISMISSED** on the merits and with prejudice, without an award of attorneys' fees

7   or costs to any party except as provided in this Order.

8       The Court shall not retain continuing jurisdiction over implementation of the

9   Settlement or future disputes over construing, enforcing, or administering the Settlement.

10      The Clerk of Court is instructed to terminate this case.

11      **IT IS SO ORDERED.**

12

13  DATED:  October 23, 2013

14

15                                    Hon. Michael M. Anello
                                      United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28